AUDREY A. O'BRIEN *vs.* FRANCIS X. O'BRIEN
(and a companion case[1]).

Norfolk. October 6, 1993. - December 6, 1993.

Present: LIACOS, C.J., WILKINS, ABRAMS, NOLAN, & O'CONNOR, JJ.

*Divorce and Separation*, Separation agreement, Alimony, Modification of
judgment, Attorney's fees. *Contract*, Separation agreement.

In an action by a former wife seeking modification of a support order en-
tered against a former husband in which she had agreed to receive ali-
mony payments that would expire approximately five and one-half
years from the date of the judgment nisi, and to surrender any further
claim against him, the judge, on the basis of findings that the wife was
receiving public assistance and that the husband was capable of con-
tributing to her support, correctly concluded that he should award sup-
port to the wife against the husband only to the extent necessary to
remove her from public asssistance; moreover, the judge's order con-
cerning the husband's payment of uninsured medical expenses of the
wife was reasonable, and the amount of attorney's fees awarded after a
hearing was properly within the judge's discretion. [479-480]

On appeal from dismissal of a claim for support made by a former wife
against the second of her three former husbands, this court expressed
the view that the probate judge's conclusion that the second husband's
obligation to support his former wife ended when she married her third
husband was a correct application of the general principle governing
this case that, when a successor spouse is financially able to support the
former recipient spouse, the former payor spouse is not obliged to con-
tribute support payments (in the absence of an agreement to the con-
trary). [480-481]

LIBEL for divorce filed in the Probate Court for the county
of Norfolk on May 4, 1973.

COMPLAINT for divorce filed in the Norfolk Division of the
Probate and Family Court Department on June 25, 1982.

---

[1]Audrey A. O'Brien *vs.* John J. Casey.

COMPLAINTS for modification of support orders filed on August 23, 1989, November 21, 1989, and November 27, 1989, respectively, were heard by *Charles J. Bowser, Jr.*, J.

The Supreme Judicial Court on its own initiative transferred the case from the Appeals Court.

*Christine A. Faro* for Audrey A. O'Brien.

*Jeffrey N. Moxon* for Francis X. O'Brien.

*Stephen D. Fried* for John J. Casey.

WILKINS, J. In 1989, the plaintiff, Audrey A. O'Brien (Audrey), who was receiving public assistance, filed complaints against two of her three former husbands seeking modification of support orders entered against them in actions of divorce. In an order dated January 31, 1991, a judge in the Probate and Family Court Department granted relief to Audrey against her most recent and third husband, Francis X. O'Brien (Francis), and denied her relief against her next prior husband, John J. Casey (John).[2]

Audrey has appealed because she disagrees with the extent of the relief she obtained against Francis and with the denial of any relief against John. Francis appeals claiming that the judge should not have granted any relief to Audrey and that, if he is to be obliged to contribute to Audrey's support, John should share the burden. We transferred the case to this court on our own motion. We affirm the judge's order. We shall first consider the judge's determinations of issues disputed between Audrey and her most recent husband, Francis. Then we shall consider the dismissal of the complaint against John.

Audrey and Francis were married in September, 1976. They had no children and were divorced in April, 1984, with the entry of a judgment entered pursuant to a settlement agreement that survived the judgment. The agreement required Francis to pay weekly alimony until early October, 1989. By the terms of the agreement Audrey surrendered all rights not set forth in the agreement. Francis is now retired

---

[2]Audrey was married to Raymond Jordan from 1951 until their divorce in 1953.

and receives an annual civil service pension of $51,000. Before and since her divorce from Francis, Audrey has been employed in various jobs, but she has not worked since September, 1989. She has had health problems, but, as the judge was warranted in finding, she is capable of working at least part time. Finding that Audrey has become a public charge and that Francis is capable of contributing to her support, the judge ordered Francis to pay alimony of $200 each week and up to $1,000 annually toward Audrey's uninsured medical bills. He also allowed attorney's fees to Audrey, but in an amount less than claimed.

1. The judge correctly concluded that he should award support to Audrey against Francis only to the extent necessary to remove her from public assistance. He structured an order which assumed that Audrey would work part time and under which, with the ordered alimony, she would not be dependent on public assistance for her basic needs. This order conformed to principles announced by this court. A separation agreement, fair and reasonable at the time of a judgment nisi, and constituting a final resolution of spousal support obligations, should be specifically enforced, absent countervailing equities. See *Stansel* v. *Stansel,* 385 Mass. 510, 514-516 (1982); *Knox* v. *Remick,* 371 Mass. 433, 436-437 (1976). If, however, a spouse who makes such an agreement becomes a public charge, a judge may order support pursuant to his statutory authority (G. L. c. 208, §§ 34, 37 [1992 ed.]), thereby not enforcing the separation agreement where to do so would impose support obligations on the taxpayers. *Knox* v. *Remick, supra.* See *Talbot* v. *Talbot,* 13 Mass. App. Ct. 456, 458-459 (1982). The result is that one spouse may not cast off by agreement a duty to support the other spouse when the other spouse is or becomes a public charge.

What we have said substantially disposes of both Audrey's and Francis's challenges to the support order. Audrey agreed to alimony payments that would expire approximately five and one-half years from the date of the judgment nisi, and at the same time she surrendered any further claim against

Francis. In circumstances such as this, a court should override provisions of this type only to the extent necessary to prevent a former spouse from becoming a public charge.

The order concerning the payment of uninsured medical expenses was reasonable. The order for support and for the payment of medical expenses may be modified as needed to conform to the standard that governs Francis's support obligations. The amount of attorney's fees awarded after a hearing was properly within the judge's discretion. *Brash* v. *Brash*, 407 Mass. 101, 106 (1990).

2. The judge properly dismissed the claim for support made against John, the next prior husband. We are not concerned here with the question of Audrey's rights against John if Francis were deceased or unable to provide adequate support for Audrey. We are, however, concerned with the question whether John at least should share the burden with Francis.

Audrey and John were married from 1968 to 1973. They had no children. In June, 1973, a decree nisi of divorce incorporated an agreement which provided for a weekly alimony payment of $225 to Audrey. It does not appear that the agreement survived the entry of the decree or that it stated the limits of Audrey's rights to future support. In September, 1975, Audrey and John agreed to modify the weekly support obligation to $125. In October, 1976, the two agreed that John would pay Audrey a lump sum of $5,000 as "payment in full for all past, present, and future claims by Audrey against John for support and property settlement." Audrey had already married Francis in the previous month. It does not appear that this agreement was reflected in any modification of the 1973 decree of divorce. At the time of trial in 1990, John had substantial assets and an annual income much greater than that of Francis.

The judge's conclusion that John's obligation to support Audrey ended when she married Francis was a correct application of a general principle that governs this case. Our cases have not announced a hard and fast rule, however, that, absent an agreement to continue support, remarriage always

terminates the support obligations of a prior spouse. In *Southworth* v. *Treadwell*, 168 Mass. 511, 512-513 (1897), the court held that remarriage was a material change of circumstances giving one a right to look for support from the new spouse and that "[i]n the absence of proof that this right was not adequate to all her needs" (*id.* at 513), a decree effectively eliminating the former wife's alimony by reducing it to a nominal sum was warranted. Cf. *Surabian* v. *Surabian*, 362 Mass. 342, 346-347 (1972) (decree incorporating separation agreement that automatically terminated alimony as of date of remarriage properly may be entered even if remarriage is later annulled; question left open whether support order properly could be modified after purported remarriage was annulled); *Glazer* v. *Silverman*, 354 Mass. 177, 180-181 (1968) (statutory right in annulment proceeding to obtain award of alimony against bigamous spouse bars enforcement of agreement for support by former payor spouse which by its terms ends when former recipient spouse goes through marriage ceremony).[3]

This court has not recently visited the general question of the automatic termination of alimony upon the remarriage of a spouse who has been receiving alimony. It does so in this case only to say that, when a successor spouse is financially able to support the former recipient spouse, the former payor spouse is not obliged to contribute support payments (in the absence of an agreement to the contrary).

---

[3]The majority rule in this country is that remarriage automatically terminates all alimony obligations to the remarried spouse. See Annot., Alimony as Affected by Wife's Remarriage, in Absence of Controlling Specific Statute, 48 A.L.R.2d 270 (1956 and later case service [1992]); Frumkes, The Impact of Remarriage on Alimony, in Alimony: New Strategies for Pursuit and Defense, 1988 ABA Sec. Fam. L. 108-109. The result would be otherwise if there were a clear agreement that alimony would not terminate on remarriage. Frumkes, *supra* at 110. Almost all States that do not make termination of alimony automatic on remarriage treat a remarriage as a strong presumption or prima facie case in favor of termination. *Id.* at 109-110.

The various challenged orders and judgments in this case are affirmed.

*So ordered.*