JUDY R. LARSON *vs.* RICHARD A. LARSON.

No. 93-P-466.

Middlesex. June 9, 1994. - July 28, 1994.

Present: BROWN, FINE, & PORADA, JJ.

*Divorce and Separation*, Separation agreement, Alimony, Modification of judgment. *Contract*, Separation agreement.

A probate judge properly interpreted an alimony provision in a separation agreement that survived the judgment of divorce with independent significance, providing that the husband pay a percentage of his earned income as alimony, and properly ordered the husband to provide a reasonable amount of alimony, where the husband had decided on his own to retire in good health from a successful career some years before his normal retirement age and thus stopped earning income, without having made some other provision for his former wife's support. [108-111] BROWN, J., concurring.

COMPLAINT for divorce filed in the Middlesex Division of the Probate and Family Court Department on June 20, 1979.

A complaint for modification, filed on January 15, 1992, was heard by *Edward M. Ginsburg*, J.

*Edwin C. Hamada* for Richard A. Larson.

*Barry J. Connelly* for Judy R. Larson.

FINE, J. We are called upon to decide whether a probate judge erred in ordering the payment of alimony, notwithstanding a provision apparently to the contrary in the parties' 1983 separation agreement, which survived the judgment of divorce with independent significance. The husband was required by the agreement to pay the wife $2,500 per month unallocated alimony and child support until the emancipation of the youngest of the couple's three children, and thereafter at the rate of thirty percent of his annual gross earned income. The youngest child became emancipated in May of 1991. The husband, claiming that he no longer had earned

income, has paid no alimony since that time. In January of 1992, the wife, alleging changed circumstances, filed a petition for modification. The case was tried in the Probate Court before the same judge who had presided over the divorce. He ruled in favor of the wife, ordering the husband to pay alimony. Claiming that the separation agreement barred modification, the husband appeals.

The background of the dispute is set forth in *Larson* v. *Larson*, 28 Mass. App. Ct. 338 (1990), and *Larson* v. *Larson*, 30 Mass. App. Ct. 418 (1991), two contempt actions brought by the wife before the same judge under the same separation agreement. She prevailed in both actions at trial and on appeal. We repeat only those facts, essentially undisputed, which bear on the present controversy.

In 1983, when the parties were divorced, the husband had been working as a surgeon and earning $90,000 annually. In addition, he had unearned income in the amount of approximately $10,000 and assets worth approximately $593,000. The wife was a homemaker, dependent upon her husband for support, with a modest amount of assets. By the time of the hearing on the petition for modification, according to the judge's findings, the husband, although in good health, had retired from the practice of medicine and was leading a life of leisure. His unearned income had increased to approximately $50,000 annually, and his assets had increased in value to approximately $1,000,000. The wife, fifty-seven and in good health, was working as a museum tour guide. She was earning $97 per week and had unearned income in the amount of $104 per week. In addition she had assets, principally the marital home gained in the divorce settlement, worth $400,000.

The parties' separation agreement states unequivocally their intent to have it survive with independent legal significance and govern their respective obligations "even though future events might occur that would alter the position of either party as it exists today," thereby protecting each against attempts by the other to vary the terms.

The judge ordered the payment of alimony in the amount of $1,080 per month, roughly thirty percent of the husband's then-current unearned income, until his death, the death of the wife, or her remarriage, whichever should occur earliest. In his memorandum of decision, the judge stated the question to be decided: "whether the concept of countervailing equities is expansive enough to afford relief in the circumstances of this case." Ruling against the husband's position, the judge stated:

> "[the husband's interpretation of the agreement] would place an undue hardship and reduction in the standard of living of the wife which neither she nor the Court, which passed on the fairness of the original agreement, would reasonably have anticipated. It is one thing to exclude unearned income as a source of alimony when the husband was a successful surgeon with many years of productive earnings before him but quite another matter when that husband at the age of fifty-five . . . in excellent health voluntarily retires in order to pursue another lifestyle. The husband is entitled to retire, but he is not entitled to place the total economic burden of that voluntary act upon his former wife of many years who because of a lack of earning capacity and the loss of alimony at a point in time where she could not put aside enough for her later years is not rendered a public charge but is reduced to very modest standard of living well below that to which she was accustomed both during and after the marriage."

We recognize that a party seeking modification of an alimony provision in a surviving separation agreement has a heavy burden. Something more than a material change of circumstances must be shown. See *McCarthy* v. *McCarthy*, 36 Mass. App. Ct. 490, 490-491 (1994). A showing is required that, without modification, the spouse seeking modification will otherwise become a public charge, see *O'Brien* v. *O'Brien*, 416 Mass. 477, 479 (1993), that the other party has not complied with the provisions of the agreement, see *Knox*

v. *Remick*, 371 Mass. 433, 437 (1976), or that there are countervailing equities "at least as compelling as [those] two grounds. . . . " *Stansel* v. *Stansel*, 385 Mass. 510, 516 (1982). This is not a case in which the wife is threatened with becoming a public charge. Although the husband's two prior contempts may bear on the issue of countervailing equities, we think, as the judge implicitly recognized, the issue is not the existence of countervailing equities in the usual sense but the proper interpretation of the agreement "in accordance with justice and common sense and the probable intention of the parties." *Whelan* v. *Frisbee*, 29 Mass. App. Ct. 76, 81 (1990). On what we believe to be the proper interpretation of the husband's obligations under the agreement, an order for payment of some alimony was appropriate.

We assume that both parties reasonably contemplated at the time the bargain was reached that the husband would either continue to work in his profession over the course of his normal work life expectancy, as long as he remained in good health, or make some other arrangement for the wife's support.[1] Contrast *Barry* v. *Barry*, 409 Mass. 727, 733 (1991) (wife agreed to alimony which would terminate when husband reached sixty-five); *O'Brien* v. *O'Brien*, 416 Mass. at 479-480 (wife agreed to alimony that would end approximately five and one-half years from the date of the judgment).

"Every contract imposes upon each party a duty of good faith and fair dealing in its performance and its enforcement." Restatement (Second) of Contracts § 205 (1979). See *Warner Ins. Co.* v. *Commissioner of Ins.*, 406 Mass. 354, 362 n.9 (1990), quoting from *Kerrigan* v. *Boston*, 361 Mass. 24, 33 (1972). This principle has been recognized in Massachusetts in commercial situations. See *Center Garment Co.* v. *United Refrigerator Co.*, 369 Mass. 633, 637 (1976); *Fortune* v. *National Cash Register Co.*, 373 Mass. 96, 104

---

[1] In an affidavit submitted to the Probate Court, the wife acknowledges that, at the time she entered into the separation agreement, it was her understanding and expectation that her husband would retire, at the earliest, when he turned sixty-two.

(1977); *Anthony's Pier Four, Inc.* v. *HBC Assocs.*, 411 Mass. 451, 471-472 (1991). See also *Heinrich* v. *R.L. Oil & Gas Co.*, 442 N.W.2d 467 (S.D. 1989). The principle is at least as applicable in the context of a marital separation agreement. See *Lavington* v. *Edgell*, 127 A.D.2d 155, 157 (N.Y. 1987) (wife violated covenant of good faith and fair dealing under terms of separation agreement by depriving husband of notice and opportunity to purchase property); *Wilmington Trust Co.* v. *Clark*, 289 Md. 313, 324-325 (1981) (although covenant of good faith and fair dealing may apply in separation agreements, suicide of husband does not constitute breach of the covenant). Compare *Cravero* v. *Holleger*, 566 A.2d 8, 18 (Del. Ch. 1989). At the heart of that covenant is the mutual understanding " 'that neither party shall do anything that will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract. . . .' " *Anthony's Pier Four, Inc.* v. *HBC Assocs.*, 411 Mass. at 471-472, quoting from *Drucker* v. *Roland Wm. Jutras Assocs.*, 370 Mass. 383, 385 (1976). Having agreed to pay a portion of his earnings to support his former wife, the husband violated a breach of his duty of good faith in the circumstances when he decided on his own to retire from a successful career while in his mid-fifties and in good health without making some other provision for his former wife's support. That decision deprived the wife of her reasonably anticipated fruits of the separation agreement and amounted to an "evasion of the spirit of the bargain." Restatement (Second) of Contracts § 205 comment d.

The judge's alimony order was reasonable in amount. The amount was less than thirty percent of the husband's unearned income in 1991 and considerably less than thirty percent of his earned income at the time of the divorce. The order should terminate, however, no later than the husband's reaching the normal retirement age.[2]

---

[2] Because of the wife's admission in her affidavit, see note 1, *supra*, the husband's normal retirement age in this case would be sixty-two. Although he was obligated to do so, however, the husband paid no alimony for the seventeen-month period between May of 1991, the date on which the

Accordingly, the modification judgment should be amended by adding the words "until the defendant's reaching the normal retirement age" after the word "month" in the third line of paragraph one of the modification judgment. As so amended, the judgment is affirmed.[3]

*So ordered.*

BROWN, J. (concurring). I am fully in accord with the well-reasoned opinion of the majority. However, it seems to me that a few additional observations are warranted. First, better draftsmanship would most likely have obviated the problem (but not the litigation if prior experience is any guide). Second, I am *amazed* that an orthopedic surgeon affiliated with a private hospital in Massachusetts was only earning $90,000 annually.[1] And lastly, I think it was patently unfair to the spouse for a healthy, productive medical specialist to retire *abruptly* without forewarning his former spouse, particularly, where, as here, the percentage income factor on which her alimony is based, is reduced to zero.

If the husband *knew* at the time he entered into the agreement that he would retire prematurely and, thus, have no earned income at the time the alimony provision in issue would come into effect, one could easily infer that it was deceitful in those circumstances for him not to have indicated that knowledge to his wife. Had she known, given the hus-

---

youngest child became emancipated, and the effective date of the alimony order, October 8, 1992. Thus, in fairness to the wife, the order, insofar as it requires payments until the husband reaches "the normal retirement age," should be interpreted as requiring the payments to continue for an additional seventeen-month period beyond the husband's sixty-second birthday.

[3] The wife may submit to this court a motion for counsel fees within thirty days after issuance of our rescript, in accordance with the procedural requirements of *Yorke Mgmt.* v. *Castro*, 406 Mass. 17, 20 (1989).

[1] The mean income for surgeons in 1983 was $144,000, and that figure increased to over $236,000 in 1990. U.S. Bureau of the Census, Statistical Abstract of the United States 120, No. 176, Medical Practice Characteristics, by Selected Speciality: 1983-1990 (113th ed. 1993).

band's substantial means at the time, she obviously would have sought a different financial settlement. Although the majority is reluctant to assume such deceit on the part of the husband, it seems to me that when the husband's conduct is viewed in its totality an adequate basis appears for the wife's avoiding the agreement.

The "games" spouses play in highly emotional, and oft-times irrational, divorce situations never cease to amaze. See, e.g., *Kennedy* v. *Kennedy*, 10 Mass. App. Ct. 113 (1980), where, unlike here, there were four incarnations. However, even if the parties are not prepared to play by the rules, the divorce bar must step up and say (and mean it) that "we won't play anymore," which not only is ethical and sound professionalism,[2] but enlightened self-interest, given the recent decision of *Avery* v. *Steele*, 414 Mass. 450, 457 (1993).

---

[2]See in this regard Standards of Conduct and accompanying comments set out in American Academy of Matrimonial Lawyers, Bounds of Advocacy (1991). See also Kindregan & Inker, Family Law and Practice § 11.1 (Supp. 1994).