# Linda Abegglen *vs.* James Abegglen.

No. 04-P-1404.

Middlesex. June 15, 2005. - September 22, 2005.

Present: Beck, McHugh, & Kafker, JJ.

*Divorce and Separation,* Separation agreement. *Contract,* Separation agreement, Performance and breach, Implied covenant of good faith and fair dealing. *Fiduciary.*

In a civil action, the judge did not err in finding that the defendant was not in breach of the terms of a separation agreement and the implied covenant of good faith and fair dealing, where, as required by the separation agreement, the defendant had established an estate plan leaving one-third of his estate in trust to the plaintiff should she survive him and not remarry; where the separation agreement did not prohibit anything else that the defendant had done or require him to do something that he had failed to do; and where the judge did not find any facts supporting a violation of the covenant of good faith and fair dealing [594-596]; moreover, the judge did not err in denying the plaintiff's motion to amend the complaint to add a breach of fiduciary duty claim, where the defendant had satisfied the highest standard of good faith and fair dealing in his performance of his obligations under the settlement agreement [596-597].
This court declined an invitation to overturn *Daniels* v. *Newton,* 114 Mass. 530 (1874), relating to anticipatory breach of contract. [597-598]

Civil action commenced in the Superior Court Department on October 27, 1998.

The case was heard by *Leila R. Kern,* J.

*Thomas M. Elcock* for the plaintiff.

*Ruth T. Dowling* for the defendant.

Kafker, J. The plaintiff, Linda Abegglen, contends that the defendant, James Abegglen, breached his obligations to her arising out of the separation agreement they signed in connection with their divorce. According to the separation agreement, the defendant was to establish an estate plan that leaves one-third of his estate in trust to the plaintiff should she survive him and

not remarry. The plaintiff claims that although the defendant's estate plan literally provides for this, he has invested, divested, and diminished his assets in such ways that it is unlikely that one-third will be available for her. Following a bench trial, a Superior Court judge ordered judgment for the defendant. We affirm.

1. *Factual background.* The parties were married on August 22, 1964, and lived together in Massachusetts. On September 16, 1982, they executed the separation agreement, which was incorporated but not merged in a later judgment of divorce nisi. The critical part of the separation agreement provides:

> "The Husband agrees that his estate plan in effect on the date of this Agreement will remain in effect until the Husband establishes a new estate plan which will ensure that after the Husband's death at least one-third of the Husband's net estate . . . shall be set aside in trust on the following terms: income from trust shall be paid to the Wife until her death or prior remarriage. The trustee in its discretion may use the principal of the trust as may be necessary for the maintenance of the Wife."

At the time of the execution of the separation agreement, the defendant had net assets of approximately $510,000 ($460,000 of which derived from his profit sharing plan from his employment at Boston Consulting Group) as well as a pension plan that was later funded at $825,000. Pursuant to the separation agreement, the defendant was required to (1) pay the plaintiff $510,000 in instalments over a ten-year period; (2) provide child support; (3) transfer his interest in the parties' Weston home to the plaintiff; and (4) pay the plaintiff $20,000 for attorney's fees. He fully complied with all these obligations.

At the time of the execution of the separation agreement, the defendant was fifty-six years old. He was an American expert on Japanese business practices, having written influential books on the subject and served as chief executive officer and president of Boston Consulting Group in Japan from 1966 to 1979. He planned to phase out his employment at Boston Consulting Group with the objective of retiring within a few years. He had accepted a professorship at Sophia University in

Japan with a salary of less than $100,000. The judge found that at the time of the separation agreement, the plaintiff knew that the defendant intended to reside permanently in Japan and retire from Boston Consulting Group in the next few years.

Since the execution of the separation agreement and the divorce, the defendant has remarried, become a citizen of Japan, and amassed significant wealth. The judge found that plaintiff "was surprised to learn in the mid-1990's that [the defendant's] assets were valued in the millions." In fact, as of June 30, 2001, he had net assets of $12.7 million, all of which were located outside the United States. He was also earning approximately $200,000 in income every year. His assets included shares of Learning Technologies stock worth approximately $7.7 million. The defendant has been an active member of the board of directors of Learning Technologies and served as chairman of the company's audit committee at the time of trial. His other assets included an apartment in Tokyo that he co-owns with his current wife and mother-in-law and a summer home in Japan that he co-owns with his current wife only (together worth approximately $2 million). The plaintiff contends that the apartment and summer home are extravagant. The court concluded, however, that given his success, there "is no reason to find that [the defendant's] lifestyle is 'lavish or inappropriate' and this court does not infer from this lifestyle that Mr. Abegglen is spending his assets in order to avoid his obligation to the plaintiff."

The defendant's other assets include investments, bonds, accounts, and insurance policies that are owned jointly with his current wife or name her as the beneficiary. In addition, the judge found, based solely on the defendant's testimony, that one-half of his estate would automatically go to his current wife upon his death under Japanese probate laws.[1]

The defendant's ownership of shares of private stock in

---

[1]The defendant's testimony was, however, as follows:

Q.    "Sir, on your death, half your estate automatically goes to your current wife, correct?"

A.    "That would not be the case, given that my will and the arrangements under it and the commitments under U.S. law have a prior

Learning Technologies is governed by a stockholder's agreement. There is no public market for the company's stock; however, shareholders may "put" shares to the company for repurchase four times each year. The defendant has occasionally done this, most recently in December, 2001, in exchange for $2.5 million. Upon a shareholder's death, Learning Technologies has four months to decide whether to repurchase the shares. If the company elects to do so, fifty percent of the stock's value is paid in cash at the closing, with the balance paid in a note that is not due for another year. If Learning Technologies does not exercise this option, the shares are then offered to the other shareholders.[2]

The trial judge heard testimony from an expert on each side that the defendant had been "lucky" in his investment in Learning Technologies and that he was able to amass a large asset base from 1982 to 2001 using his own "risky" strategy. The judge found that both experts would have advised an asset distribution of roughly sixty percent equities, thirty percent bonds, and ten percent cash savings, not the investment strategy the defendant employed. The judge found, however, that the defendant's "management of his assets was reasonable."

In 1999, the defendant executed a new will, governed by the laws of the Cayman Islands.[3] In this will, the defendant bequeathed one-third of his net estate in trust to the plaintiff upon his death.

The trial judge found that the defendant "appeared for deposition and for trial even though he is beyond the jurisdiction of this court." The judge also found that the defendant appointed

---

obligation. My assumption is, and this is more a matter for the Court than for someone like myself, is that the U.S. requirement must first be met and at that point Japanese estate inheritance will apply."

Neither our analysis nor the trial judge's turns on the effect of Japanese inheritance laws.

[2] These transactions would be barred, however, if they would result in the classification of Learning Technologies as a controlled foreign corporation, a foreign personal holding company, a Japanese family corporation, or a designated tax haven subsidiary.

[3] The plaintiff provides no analysis of the laws of the Cayman Islands.

counsel in the United States to be executor of his will[4] and informed the executor of his obligation to the plaintiff, as well as the location of his assets. The court "infers from this that Mr. Abegglen is not trying to avoid his obligation to the plaintiff."

The plaintiff commenced this action on October 27, 1998, with a two-count complaint alleging breach of contract and breach of the implied covenant of good faith and fair dealing. After discovery, but before trial, the plaintiff moved to amend the complaint to include a third count for breach of fiduciary duty, which was opposed by the defendant. A three-day trial was concluded in June, 2002. One year later, the judge ordered judgment in favor of the defendant. On the breach of contract claim, she ruled that the "Commonwealth does not recognize the concept of anticipatory breach." On the second count, the judge concluded that the defendant did not breach the covenant of good faith and fair dealing. The judge denied the motion to amend to include the third count because she found that there was no fiduciary relationship between the parties. The plaintiff appealed.

2. *Discussion.* The separation agreement at issue imposed a number of obligations on the defendant. With the exception of the estate plan provision, there is no question that he has fully complied with the agreement. In regard to the estate plan provision, there is also no question that he has complied with the letter of the separation agreement by including the required provision in his will. He is also very much alive and thriving financially. The plaintiff contends nonetheless that the trial judge erred in (1) not finding the defendant in breach of the contract and the implied covenant of good faith and fair dealing and (2) not allowing the plaintiff's motion to amend the complaint to add a breach of fiduciary duty count.

The plaintiff relies on a series of separation agreement cases in which the letter of the agreement was complied with, but one party to the agreement prevented the other from receiving the "the fruits of the contract" through voluntary actions. See *Nile* v. *Nile*, 432 Mass. 390, 398 (2000); *Krapf* v. *Krapf*, 439 Mass.

---

[4]The executor, a trusts and estates lawyer at a large Seattle, Washington, firm, was selected for his background in the law of Japan.

97, 106 (2003); *Larson* v. *Larson*, 37 Mass. App. Ct. 106, 110 (1994). See also *Eaton* v. *Eaton*, 233 Mass. 351 (1919) (involving an antenuptial agreement including testamentary provisions ensuring equal treatment of the wife with the sons of an earlier marriage). The court in each case refused to sanction the "evasion of the spirit of the bargain." *Krapf* v. *Krapf, supra* at 107 (holding such action violative of the "high obligation of good faith and fair dealing" imposed by such agreements). The benefits actually lost in these cases, however, provide a striking contrast to the benefits anxiously awaited and presently preserved here.

In *Krapf* v. *Krapf, supra* at 98-100, the separation agreement provided the wife with one-half of the husband's United States Army pension rights. The husband thereafter successfully applied for Veterans Administration disability benefits that resulted in a dollar for dollar reduction in his Army pension payment, thereby reducing the wife's payments from over $1,000 per month to $145 per month while allowing the husband to double his service-related income. Likewise, in *Nile* v. *Nile, supra* at 392-393, the party to the postdivorce settlement agreement agreed to bequeath and devise to the children of his first marriage not less than two-thirds of his estate. Thereafter, "he poured most of his assets into a revocable inter vivos trust in favor of his new wife, with the result that, when he died, the children of his former wife were left with nothing in the probate estate and very little from the trust." *Krapf* v. *Krapf, supra* at 106 (summarizing the *Nile* case). Finally, in *Larson* v. *Larson, supra* at 107, a surgeon, who had agreed to provide his wife with thirty percent of his annual earned income after his children were emancipated, discontinued the alimony payments when he retired, in good health, in his mid-fifties to live a life of "leisure" based on his unearned income. This court found a violation of the covenant of good faith and fair dealing, concluding that "both parties reasonably contemplated at the time the bargain was reached that the husband would either continue to work in his profession over the course of his normal work life expectancy, as long as he remained in good health, or make some other arrangement for the wife's support." *Id.* at 109.

The plaintiff here, in contrast, has not experienced a diminu-

tion of benefits. Rather, the defendant has increased the value of his estate enormously and has included the required provision in his will. Also, although he is now in his late seventies, he continues to earn $200,000 in income each year. The plaintiff is nevertheless anxious and suspicious because the defendant has become a resident and citizen of Japan, married a Japanese woman with whom he co-owns expensive residences, set up joint accounts with his second wife and named her as his beneficiary on various insurance policies, and maintains no assets in the United States. Also, approximately $7 million of his $12 million estate consists of stock of a privately held company.

The defendant is of course free to remarry. The separation agreement does not expressly prohibit anything else he has done, or require him to do something he has failed to do, such as maintain investments in the United States or segregate assets for the plaintiff's benefit prior to his death. Moreover, the judge did not find any facts supporting a violation of the covenant of good faith and fair dealing. The defendant's intention to resign from Boston Consulting Group and move to Japan to become a university professor at a lower salary was understood by the wife at the time of the execution of the separation agreement. Contrast *Larson* v. *Larson*, 37 Mass. App. Ct. at 109. The judge found no reason to infer that the defendant was spending his assets or structuring his investments to avoid his obligation to the plaintiff. Contrast *Eaton* v. *Eaton*, 233 Mass. at 375-376; *Nile* v. *Nile*, 432 Mass. at 399. The judge also found the defendant's risky investment strategy reasonable given that he was a sophisticated business person and an active member of the board of Learning Technologies in which he held a disproportionate, yet enormously successful, investment. We discern no error in the judge's analysis of either the language of the separation agreement or the covenant of good faith and fair dealing.

The plaintiff further argues that the judge erroneously denied the motion to amend the complaint to add a breach of fiduciary duty claim. When she issued her decision on the motion to amend, the trial judge was unaware of the then-recent decision of the Supreme Judicial Court in *Krapf* v. *Krapf*, 439 Mass. at 103, in which the court explicitly stated that "[p]arties to a

separation agreement stand as fiduciaries to each other, and will be held to the highest standards of good faith and fair dealing in the performance of their contractual obligations." See *Gaw* v. *Sappett*, 62 Mass. App. Ct. 405, 413 (2004). However, she was aware of, and correctly applied in her analysis, the line of cases that the Supreme Judicial Court relied on in *Krapf* v. *Krapf* (see *Eaton* v. *Eaton*, *supra*, and *Larson* v. *Larson*, *supra*; see also *Nile* v. *Nile*, *supra*) that provides the conceptual foundation for the "highest standard of good faith and fair dealing" requirement. The judge's findings of fact also establish that the defendant had, to the date of trial, satisfied the "highest standard of good faith and fair dealing" requirement in his performance of his obligations under the settlement agreement.

Finally, based on undeveloped factual contentions and legal arguments,[5] the plaintiff asks us to anticipate that there will not be funds available to satisfy the obligation owed to the plaintiff upon the defendant's death and to order appropriate, unspecified relief. She also asks us to overturn *Daniels* v. *Newton*, 114 Mass. 530 (1874), and a century of jurisprudence in Massachusetts related to anticipatory breach. Based on the record before us, there are no grounds for intervention, as there has been no breach of the separation agreement provisions or the highest standards of good faith and fair dealing required in the performance of these contractual obligations. Furthermore, as demonstrated by such cases as *Eaton* v. *Eaton*, *supra* (allowing a will contest by the wife to proceed where she did not receive the benefit of an antenuptial agreement); *Nile* v. *Nile*, *supra* (imposing a constructive trust on those benefiting from the decedent's failure to abide by the terms of his divorce settlement agreement); and *Larson* v. *Larson*, *supra* (allowing modification of an alimony provision in a surviving separation

---

[5]For example, without any legal analysis or even reference to relevant statutes or regulations, the plaintiff raises questions about the possible effect of Japanese inheritance laws and stock restrictions related to controlled foreign corporations, foreign personal holding companies, Japanese family corporations, or designated tax haven subsidiaries. These arguments do not rise to the level of appellate argument. Mass.R.A.P. 16(a)(4), as amended, 367 Mass. 921 (1975).

agreement), the plaintiff is not without remedy if the defendant does not fulfil his obligations under the separation agreement.

*Judgment affirmed.*