NOTICE: All slip opinions and orders are subject to formal revision and are superseded by the advance sheets and bound volumes of the Official Reports. If you find a typographical error or other formal error, please notify the Reporter of Decisions, Supreme Judicial Court, John Adams Courthouse, 1 Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-1030; SJCReporter@sjc.state.ma.us

13-P-1988                                    Appeals Court

MANOHAR A. LALCHANDANI  vs.  RUTH H. RODDY.[1]


No. 13-P-1988.

Hampden.    November 6, 2014. - January 5, 2015.

Present:  Green, Wolohojian, & Blake, JJ.


Divorce and Separation, Alimony, Modification of judgment, Separation agreement. Contract, Separation agreement. Practice, Civil, Motion to dismiss.


Complaint for divorce filed in the Hampden Division of the Probate and Family Court Department on December 6, 1990.

A motion to dismiss a complaint for modification, which had been filed on March 1, 2013, was heard by Barbara M. Hyland, J.


Mark A. Tanner for the husband.
George W. Marion for the wife.


BLAKE, J.  Manohar A. Lalchandani, the former husband (hereinafter, husband) of Ruth H. Roddy (hereinafter, wife) appeals the dismissal of his complaint for modification of a judgment of divorce, in which he sought to decrease or to

_____

[1] Formerly known as Ruth Lalchandani.

terminate his alimony obligation. In a case of first impression under the Alimony Reform Act of 2011 (act), we determine whether a payor spouse who has reached full Social Security retirement age is entitled to modification of his alimony obligation, where that obligation stems from a separation agreement that survived entry of the divorce judgment, but was subsequently modified by agreement of the parties. See St. 2011, c. 124. We affirm.[2]

Background. The parties were divorced on September 21, 1992, after nearly twenty-one years of marriage. The judgment of divorce incorporated the terms of the parties' separation agreement (1992 agreement), which provided, in pertinent part, that the husband was to (1) pay $4,333.33 per month to the wife as alimony until either party's death or the wife's remarriage, (2) maintain health insurance for the wife until either party's death or the wife's remarriage, and (3) maintain a life insurance policy with a death benefit of $200,000 until either party's death or the wife's remarriage. The 1992 agreement further provided that it was to be incorporated -- but not merged -- into the divorce judgment, and accordingly would

---

[2] We note that no judgment of dismissal appears to have been entered in the Probate and Family Court. It also does not appear that the husband was granted leave to file an interlocutory appeal. In our discretion, we reach the merits of the issues briefed by the parties. See Scannell v. Attorney Gen., 70 Mass. App. Ct. 46, 47 n.2 (2007).

retain independent legal significance.[3] Nevertheless, the 1992 agreement allowed the parties to modify its terms by mutual agreement. Specifically, the 1992 agreement indicated, "This Agreement shall not be altered or modified except by an instrument signed and acknowledged by the Husband and the Wife."

In October of 1996, the wife filed a complaint for contempt against the husband for, among other claims, unpaid alimony. The parties resolved the contempt action by a stipulation filed on December 17, 1996. The stipulation was incorporated, but not merged, into a modification judgment dated January 8, 1997, and provided that the husband would pay a compromised amount of the alimony arrearage to the wife, and the wife agreed to be solely responsible for the cost of her health insurance. As consideration for these concessions by the wife, the husband agreed "not [to] seek a modification of his alimony obligation until at least January 1, 1999." In addition, the parties agreed that the "moratorium on such a modification shall be considered absolute; except, however, that [the husband] may seek relief from the court in the event that he becomes totally disabled such that he is completely prevented from working, and

---

[3] Specifically, the agreement stated that it "is intended to be and remain effective as a contract and shall not be extinguished by merger as a result of incorporation in any decree or order or judgment, irrespective of any court decree, order or judgment to the contrary stating that it shall merge. This Agreement shall in all events survive such decree, order or judgment and be forever binding upon the parties."

4

any relief granted shall only apply to the period of [the husband's] total disability."  Similar to the 1992 agreement, the parties agreed that the stipulation was to be "incorporated into a judgment by leave of the Court, but the Stipulation shall survive said judgment as a binding contract with independent legal significance."

On March 1, 2013, the husband filed a complaint for modification seeking to decrease or to terminate his alimony obligation, alleging that his attainment of full retirement age constituted a material change of circumstances.  Furthermore, he alleged:  "It is March 1, 2013, or after and the alimony payor has reached full retirement age as defined in G. L. c. 208, § 48, or will reach full retirement age on or before March 1, 2015."[4]  The husband did not plead any other grounds in support of his requested relief.

The husband's complaint relies on § 3 of the act,[5] specifically where it provides:  "Once issued, general term alimony orders shall terminate upon the payor attaining the full retirement age."  G. L. c. 208, § 49(f).  Section 5 of the act further provided that March 1, 2013, would be the first date

---

[4] This allegation was pleaded by checking a box on the court-generated complaint.

[5] Certain portions of the act are codified at G. L. c. 208, §§ 48-55.

upon which a complaint alleging that the payor had reached full retirement age[6] could be filed.

The wife moved to dismiss the husband's complaint pursuant to Mass.R.Civ.P. 12(b)(1) and 12(b)(6), 365 Mass. 754 (1974), and, following a hearing, a Probate and Family Court judge allowed her motion, concluding that the 1992 agreement and the subsequent stipulation survived as independent contracts and therefore were not subject to modification under the act.[7]

Discussion. a. Modification under the act. On appeal, the husband maintains that the act provides for the termination of his alimony obligation because he has reached full retirement age and, therefore, that the judge erred in dismissing his complaint. We review the allowance of a motion to dismiss de novo. Galiastro v. Mortgage Electronic Registration Sys., Inc., 467 Mass. 160, 164 (2014). "In assessing the adequacy of a complaint, we read the complaint's allegations generously and in the plaintiff's favor." Vranos v. Skinner, 77 Mass. App. Ct. 280, 287 (2010). To withstand dismissal, the complaint's factual allegations, so read, "must be enough to raise a right

---

[6] Full retirement age is defined in G. L. c. 208, § 48, inserted by St. 2011, c. 124, § 3, as "the payor's normal retirement age to be eligible to receive full retirement benefits under the United States Old Age, Survivors, and Disability Insurance program."

[7] We limit our discussion to rule 12(b)(6), as the wife made no argument under rule 12(b)(1) in her brief and waived the same at oral argument.

to relief above the speculative level." Iannacchino v. Ford Motor Co., 451 Mass. 623, 636 (2008), quoting from Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007).

Although it is true, as the husband points out, that the act provides that general term alimony orders terminate upon a payor attaining full retirement age, that provision does not apply to an alimony obligation that survives as an independent contract and did not merge into a judgment. Section 4(c) of the act explicitly precludes modification of a surviving alimony obligation:

> "Under no circumstances shall [the act] provide a right to seek or receive modification of an existing alimony judgment in which the parties have agreed that their alimony judgment is not modifiable, or in which the parties have expressed their intention that their agreed alimony provisions survive the judgment and therefore are not modifiable."

Although the act changed the legal framework under which alimony may be awarded upon divorce or in a subsequent modification action,[8] it did not reform our long-standing legal doctrine that surviving, nonmerged alimony provisions are not modifiable. The plain language of § 4(c) evidences that the Legislature did not intend to displace or to alter our established legal principle that surviving alimony obligations

_____

[8] The legal framework established by the act has been explained and discussed in several recent decisions. See Holmes v. Holmes, 467 Mass. 653 (2014); Zaleski v. Zaleski, 469 Mass. 230 (2014); Hassey v. Hassey, 85 Mass. App. Ct. 518 (2014).

are not subject to modification.  See Holmes v. Holmes, 467

Mass. 653, 659 (2014) (statutory language is clearest indication

of legislative intent).  In this way, the act respects our

decisional law, which has permitted and encouraged divorcing

parties to enter into written separation agreements that they

"may elect to [have] survive the divorce judgment as independent

contracts."  Krapf v. Krapf, 439 Mass. 97, 103 (2003).  See

Moore v. Moore, 389 Mass. 21, 24 (1983) (noting "Commonwealth's

strong policy . . . favor[ing] survival of separation

agreements, even when such an intent of the parties is merely

implied").  "Such surviving separation agreements . . . secure

with finality the parties' respective rights and obligations

concerning the division of marital assets, among other things,

according to established contract principles."  Krapf v. Krapf,

supra, citing DeCristofaro v. DeCristofaro, 24 Mass. App. Ct.

231, 236-237 (1987); Larson v. Larson, 37 Mass. App. Ct. 106,

108-109 (1994).

Here, the husband acknowledges that the 1992 agreement,

which survived as an independent contract, is not modifiable.

But he posits that because of the terms of the subsequent

stipulation, he is entitled to the benefit of the act because

(1) the parties reserved to themselves the right to modify their

agreement in the future, and (2) the stipulation contemplated

future modifications.  These arguments fail because both the

1992 agreement and the stipulation provide, by their own terms, that they are to remain independent contracts, not subject to modification. See Parrish v. Parrish, 30 Mass. App. Ct. 78, 83 (1991) (intent of parties, as determined from "whole agreement," controls when deciding whether separation agreement survives judgment of divorce).[9],[10]

b. Ambiguity in stipulation. The husband further argues that there is an ambiguity in the stipulation sufficient to withstand a rule 12(b)(6) challenge. The question whether a contract is ambiguous is a question of law, as is the interpretation of a separation agreement. See Eigerman v. Putnam Invs., Inc., 450 Mass. 281, 287 (2007); Cavanagh v. Cavanagh, 33 Mass. App. Ct. 240, 242 (1992). We review these claims de novo.

---

[9] In light of our conclusion, we need not address the wife's contention that the complaint is improper because the act is prospective only.

[10] The husband made a passing reference to so-called "countervailing equities" before the judge below, which he suggested could provide another avenue of relief apart from the act. Countervailing equities may allow for the modification of a surviving alimony obligation in certain limited circumstances such as when a spouse is, or will become, a public charge. See Knox v. Remick, 371 Mass. 433, 436-437 (1976). Countervailing equities are "more than a material change of circumstances." Larson v. Larson, supra at 108. Countervailing equities were not pleaded in the complaint, and the issue is waived here because the husband did not raise it in his brief. See Mass.R.A.P. 16(a)(4), as amended, 367 Mass. 921 (1975).

The husband contends that the stipulation that modified the 1992 agreement, despite clear language that the 1992 agreement is not modifiable, serves as a waiver of the surviving nature of the 1992 agreement, rendering it ambiguous.  We disagree.  As noted by the judge, the "agreement to modify one term or provision of an otherwise surviving agreement does not open the door to further modifications.  In fact, the Stipulation goes on to further reaffirm the termination of alimony provisions as it appears in the Separation Agreement."  Moreover, "an ambiguity is not created simply because a controversy exists between parties, each favoring an interpretation contrary to the other." Southern Union Co. v. Department of Pub. Util., 458 Mass. 812, 820-821 (2011), quoting from Lumbermens Mut. Cas. Co. v. Offices Unlimited, Inc., 419 Mass. 462, 466 (1995).  On this record, there is no ambiguity.

c.  Procedure below.  The husband also claims that the judge considered evidence outside of his complaint, essentially converting the proceeding to a motion for summary judgment.  The record does not support this claim.  "In evaluating a rule 12(b)(6) motion, we take into consideration 'the allegations in the complaint, although matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint, also may be taken into account.'"  Schaer v. Brandeis Univ., 432 Mass. 474, 477 (2000), quoting 5A Wright &

Miller, Federal Practice and Procedure § 1357, at 299 (1990).
Here, the judge appropriately took judicial notice of the 1992
agreement and the stipulation, both of which were docketed
pleadings and part of the record.  See, e.g., Fraelick v.
PerkettPR, Inc., 83 Mass. App. Ct. 698, 700 n.3 (2013)
(plaintiff had notice of "extrinsic" document and relied on it
in framing complaint; defendants' motion to dismiss properly not
converted to one for summary judgment), quoting from Golchin v.
Liberty Mut. Ins. Co., 460 Mass. 222, 224 (2011).

Conclusion.  The order allowing the wife's motion to
dismiss is affirmed, and judgment shall enter accordingly.[11]

So ordered.

---

[11] See note 2, supra.