NOTICE:  All slip opinions and orders are subject to formal revision
and are superseded by the advance sheets and bound volumes of the
Official Reports.  If you find a typographical error or other formal
error, please notify the Reporter of Decisions, Supreme Judicial
Court, John Adams Courthouse, 1 Pemberton Square, Suite 2500, Boston,
MA, 02108-1750; (617) 557-1030; SJCReporter@sjc.state.ma.us

SJC-11726

GEORGE J. RODMAN  vs.  ROBERTA RODMAN.


Norfolk.     October 6, 2014. - January 30, 2015.

Present:  Gants, C.J., Spina, Cordy, Botsford, Duffly, Lenk, & Hines,
JJ.

Divorce and Separation, Alimony, Modification of judgment, Separation
     agreement.  Statute, Retroactive application.


Complaint for divorce filed in the Norfolk Division of the
Probate and Family Court Department on March 12, 2008.

Following the filing of a complaint for modification on November
14, 2013, a question of law was reported by Gregory V. Roach, J.

The Supreme Judicial Court granted an application for direct
appellate review.


David E. Cherny (Thomas D. Ritter with him) for the husband.
Michael P. Doherty for the wife.


DUFFLY, J.  The former husband, George J. Rodman, brought a

complaint for modification in the Probate and Family Court, seeking

to terminate certain obligations to his former wife, Roberta Rodman,

arising under a separation agreement the parties had entered into in

connection with their divorce.  The divorce judgment nisi, which

entered in April, 2008, incorporated and merged into that judgment

the provision at issue here, obligating George to pay alimony to Roberta in the amount of $1,539 per week.[1]  During the pendency of the modification proceeding, George filed a motion seeking immediate termination of the alimony payments on the ground that he had reached "full retirement age" as defined by G. L. c. 208, § 48, which was enacted by St. 2011, c. 124 (alimony reform act or act).  The motion asserted that the alimony reform act became effective March 1, 2012, and that George therefore was entitled to termination of the alimony order pursuant to G. L. c. 208, § 49 (f) (retirement provision), which provides that "general alimony orders shall terminate upon the payor attaining the full retirement age."

A Probate and Family Court judge denied the motion and then reported the following question to the Appeals Court:

> "Whether or not [G. L. c. 208, § 49 (f),] is to be applied retroactively to judgments entered before March 1, 2012."

We granted the plaintiff's application for direct appellate review.

The plaintiff presents an argument that differs somewhat from that in Chin v. Merriot, ante at     (Chin), concerning whether, and in what circumstances, the retirement provision may be applied to modify an alimony judgment that was in existence when the alimony reform act became effective.  He argues that, because his agreement merged with the judgment, it was, under applicable law, always subject

---

[1] Because they share a last name, we refer to George J. Rodman and Roberta Rodman by their first names.

to modification based on his having reached the age of retirement, and therefore that his complaint for modification does not derogate from the proscription against retroactive application set forth in the alimony reform act.

Background.   Our summary of the facts is drawn from the statement of uncontested facts set forth in the judge's reservation and report, supplemented by undisputed facts in the record.   The parties were married on March 1, 1969, and have two adult children.   At the time of the divorce in April, 2008, they had been married for thirty-nine years.   The parties entered into a separation agreement that obligated George to pay Roberta alimony in the amount of $1,539 per week, and further provided that, "[t]he Husband's obligation to pay alimony to the Wife shall terminate upon the death of the Husband, the death of the Wife, or the remarriage of the Wife, whichever first occurs."[2]   Except as to provisions relating to property division, the agreement was incorporated into and merged with a judgment of divorce nisi that entered on April 28, 2008, and became "absolute," or final, "ninety days from the entry thereof," on July 23, 2008. G. L. c. 208, § 21.

George filed a complaint for modification in November, 2013,

---

[2] Under the terms of the agreement, George also was obligated to reimburse Roberta's employer for the cost of maintaining medical insurance coverage for the parties, and to maintain life insurance, naming Roberta as sole beneficiary, with a death benefit in the amount of $650,000.

seeking to terminate his obligations to (1) pay alimony to Roberta, (2) reimburse her for the costs of health insurance payments, and (3) maintain life insurance for her benefit.  The basis for the modification was George's claim that, because he had reached full retirement age, the retirement provision required termination of his obligation to pay alimony.[3]

Discussion.  1.  Statutory interpretation standard.  "[A] statute must be interpreted according to the intent of the Legislature ascertained from all its words construed by the ordinary and approved usage of the language, considered in connection with the cause of its enactment, the mischief or imperfection to be remedied and the main object to be accomplished, to the end that the purpose of its framers may be effectuated."  Commonwealth v. Figueroa, 464 Mass. 365, 368 (2013), quoting Harvard Crimson, Inc. v. President & Fellows of Harvard College, 445 Mass. 745, 749 (2006).  Where a literal reading would "lead to an awkward and even intolerable result," we will eschew it "for a more liberal or more encompassing approach."  Mailhot v. Travelers Ins. Co., 375 Mass. 342, 348 (1978).

2.  Claim that application of the retirement provision to merged agreements is not retroactive.  George acknowledges that §§ 4 through 6 of St. 2011, c. 124, the uncodified transitional provisions of the alimony reform act (uncodified sections), govern the extent to which

---

[3] George was born in January, 1947, and was sixty-six years old when he filed the complaint for modification in November, 2013.

the act operates to apply prospectively or retroactively to existing alimony judgments. George also agrees that express language in these provisions declares that the alimony reform act is, in the main, prospective.[4] He claims, however, that modification of an alimony agreement that merges with a judgment that entered prior to March 1, 2012, as compared to one that survives the judgment, is not retrospective but prospective in effect; he contends that this applies as well to modification based on the retirement provision.

In support of this claim, George looks to uncodified § 4 (c), which provides that "[u]nder no circumstances shall [G. L. c. 208, §§ 48-55,] provide a right to seek or receive modification of an existing alimony judgment in which the parties have agreed that their alimony judgment is not modifiable, or in which the parties have expressed their intention that their agreed alimony provisions survive the judgment and therefore are not modifiable." The second clause of uncodified § 4 (c), would not permit George to seek modification pursuant to the retirement provision if his alimony agreement had survived the judgment, except in very limited circumstances. See Chin, ante at     & nn.10-12. Focusing on this clause, George appears to argue that the Legislature must therefore

---

[4] Uncodified provisions, such as those in §§ 4, 5, and 6 of St. 2011, c. 124 (uncodified sections), express the Legislature's view on a particular aspect of the operation of a new statute, including whether the statute is to be applied prospectively or retroactively. See Chin v. Merriot, ante at     (Chin).

have intended the retirement provision to apply to merged alimony agreements, which are always subject to modification on a showing of a material change in circumstances.[5]  See, e.g., <u>Pierce</u> v. <u>Pierce</u>, 455 Mass. 286, 293 (2009), quoting <u>Schuler</u> v. <u>Schuler</u>, 382 Mass. 366, 368 (1981); C.P. Kindregan, M. McBrien, & P.A. Kindregan, Family Law

---

[5] It is well settled that alimony provisions in separation agreements either merge with or survive the divorce judgment.  See G. L. c. 208, § 1A, as amended by St. 1985, c. 691.  George does not explicitly address whether the first clause of uncodified § 4 (<u>c</u>), stating that the alimony reform act provides no right to seek modification "of an existing alimony judgment in which the parties have agreed that their alimony judgment is not modifiable," refers to a judgment in which the alimony agreement has merged.  Based on George's assertion that his merged agreement was always subject to modification upon a showing of a material change in the parties' circumstances, he appears to assume that the first clause refers to merged agreements.  Because his merged agreement contains no language that alimony is not modifiable, George can make the argument that he is not precluded from seeking a modification of his alimony judgment.

We agree that the first clause appears, by implication, to include merged agreements, and that the Legislature intended to honor clear expressions by parties regarding the terms under which alimony may terminate, notwithstanding that merged agreements generally are subject to modification on a showing of a material change in circumstances.  This reading is consistent with our decision in <u>Bercume</u> v. <u>Bercume</u>, 428 Mass. 635, 644 (1999), and the Legislature is presumed to be aware of "preexisting law and the decisions of this court."  <u>Condon</u> v. <u>Haitsma</u>, 325 Mass. 371, 373 (1950).

The language referring to parties' agreements that their alimony judgment is not modifiable is mirrored in G. L. c. 208, § 49 (<u>e</u>), which provides:  "Unless the payor and recipient agree otherwise, general term alimony may be modified in duration or amount upon a material change of circumstances warranting modification."  Because of the reference to the standard for modification that applies to merged agreements, and the absence of any reference to surviving agreements, this provision also appears to contemplate that parties to such a merged agreement nonetheless may agree that their agreement will not be modified in duration or amount.

and Practice § 90.4, at 433-434 (4th ed. 2013) ("when the alimony agreement does not survive the divorce judgment the ordinary test of material change of circumstances controls in modification actions"). Under this view, modification of pre-existing, merged alimony agreements is not retroactive because parties to agreements that are always subject to modification will have anticipated potential modification based on retirement, and modification based solely on the retirement provision is thus prospective in effect.[6]

We do not accept George's view of the meaning of uncodified § 4 (c), because it would require us to disregard the familiar principle of statutory construction under which we interpret a statute as a whole. Instead, we consider the statutory provision bearing in mind that "it is improper to confine interpretation to the single section to be construed." Johnson v. Kindred Healthcare, Inc., 466 Mass. 779, 784 (2014), quoting Commonwealth v. Keefner, 461 Mass. 507, 511 (2012). We also consider the "surrounding text and structure"

---

[6] Also under this view, parties to a merged agreement that is modified pursuant to G. L. c. 208, c. § 49 (f), continue to have the same rights as they have always had to modify existing alimony awards, with the only differences being a shift in burdens and a heightened standard for establishing the need for ongoing alimony. We do not agree that the alimony reform act wrought no significant change to parties' expectations regarding modification of their alimony agreements. As we noted in Holmes v. Holmes, 467 Mass. 653, 656 (2014), "the prior alimony statute did not provide presumptive termination dates for alimony." However, because of the result we reach, we need not address George's argument that, even if the retirement provision is retroactive in effect as applied to him, the statute passes constitutional muster because it is a procedural and not a substantive change.

of these sections of the alimony reform act.  Maracich v. Spears, 133 S. Ct. 2191, 2209 (2013).

The alimony reform act became effective on March 1, 2012.  The uncodified sections of the alimony reform act are transitional provisions that do not contain the substantive law governing the duration and termination of alimony under the act.  See Chin, ante at   .   The first sentence of the first paragraph of uncodified § 4 (a) states the Legislature's intent:  "General Laws c. 208, § 49, "shall apply prospectively, such that alimony judgments entered before March 1, 2012 shall terminate only under such judgments, under a subsequent modification or as otherwise provided for in this act." When considered against this backdrop of declared Legislative intent, it is apparent from the surrounding text and structure that the provisions that follow uncodified § 4 (a) state the exception to the Legislature's overarching declaration of prospective application. The subsequent sections proceed to place conditions on the exceptions, and conclude by delineating transitional implementation dates for the filing of complaints seeking modification based on these exceptions.

The sole exception to what is in essence a bar to retroactive application of the substantive provisions of the alimony reform act is set forth in uncodified § 4 (b).  That section provides that the durational limits of alimony awards under G. L. c. 208, § 49, are applicable to "existing alimony judgments that exceed the durational

limits," and that payment of alimony for a period that extends beyond the statutory limits, "shall be deemed a material change of circumstance that warrant modification." See Chin, ante at    . The next paragraph, uncodified § 4 (c), however, specifies when the exception to these durational limits does not apply. "Under no circumstances" will the exception be available to modify "an existing alimony judgment in which the parties have agreed that their alimony judgment is not modifiable, or in which the parties have expressed their intention that their agreed alimony provisions survive the judgment and therefore are not modifiable." The succeeding provision, uncodified § 5, sets forth the dates after implementation of the alimony reform act on which a payor may file a complaint for modification based solely on a claim that an "existing alimony judgment exceeds the durational limits."[7] These dates are staggered,

---

[7] Uncodified § 5 of the alimony reform act provides, in full:

"SECTION 5. Any complaint for modification filed by a payor under [§] 4 of this act solely because the existing alimony judgment exceeds the durational limits of [G. L. c. 208, § 49,] may only be filed under the following time limits:

"(1) Payors who were married to the alimony recipient [five] years or less, may file a modification action on or after March 1, 2013.

"(2) Payors who were married to the alimony recipient [ten] years or less, but more than [five] years, may file a modification action on or after March 1, 2014.

"(3) Payors who were married to the alimony recipient [fifteen] years or less, but more than [ten] years, may file a modification

and based on the length of the marriage.[8]  For example, payors who had been married to the alimony recipient for five years or less were permitted to file a modification action on or after March 1, 2013, whereas payors who had been married ten years or less were not permitted to do so until on or after March 1, 2014.  Uncodified § 5 (1), (2).

Having considered the structure and textual refinements of the uncodified sections of the alimony reform act in the context of the Legislature's declared intent, we conclude that uncodified § 4 (c) provides no basis for the argument that the act precludes retroactive application only as to surviving alimony agreements.  The provision creates a single general exception to prospective application for "existing alimony judgments that exceed the durational limits under" G. L. c. 208, § 49, but imposes a condition on the durational limits exception, limiting it to prospective application.  The act states clearly that under "no circumstances" will the durational limits exception be available where there is "an existing alimony judgment in which the parties have agreed that their alimony judgment is not modifiable," or where the alimony agreement survives the judgment.

action on or after March 1, 2015.

  "(4) Payors who were married to the alimony recipient [twenty] years or less, but more than [fifteen] years, may file a modification action on or after September 1, 2015."

  [8] The alimony reform act defines "[l]ength of the marriage" in G. L. c. 208, § 48.

See Lalchandani v. Roddy, 86 Mass. App. Ct. 819 (2015). The Legislature plainly intended that only a claim for modification based on durational limits may (but will not always) apply retroactively to existing alimony judgments.[9] We therefore reject George's claim

---

[9] To the extent that there is any ambiguity in the language of the alimony reform act, the legislative history provides additional clarification. Floor debate prior to passage of the act demonstrates the Legislature's intent that the act be prospective. As Representative Cantwell stated, "This bill is only prospective. It cannot go back and change agreements." Representative Fernandes, a sponsor of the bill, commented:

> "[T]he bill is intended to be prospective. Now, agreements between the parties that are made and are subject to modification provisions. We are not making any changes to that. . . . [The act] does not allow for existing amounts or modification of alimony awards in the past. The only thing it would allow is a modification to the duration of an existing alimony award, which may go on forever."

This comment was made in reference to a prior draft of the bill, Senate Doc. No. 665. But apart from reorganization of some provisions, that earlier version was substantially identical to the final version of the bill, with one exception that lends support to our interpretation.

The prior proposed language states: "The provisions of this section shall be prospective, such that alimony judgments entered before the effective date of this act shall terminate only as set forth in [§] 7 (b) of this chapter." Section 7 (b) of the earlier draft provided in part that "[e]nactment of this chapter shall be deemed a material change of circumstance that warrants modification of existing alimony judgments that exceed durational limits . . . ." That portion of § 7 (b) was retained in uncodified § 4 (b).

It is apparent that, standing alone, the broad language, "alimony judgments entered before the effective date of this act shall terminate only" in accordance with the provisions relating to durational limits, could have been read to suggest that such judgments could not be modified on any basis, including a change in circumstances or as otherwise provided in the judgment. This was corrected by the

that the retirement provision may apply to modify an alimony agreement that merged in a judgment that entered prior to March 1, 2012.[10]

Conclusion.  We answer the reported question:  General Laws c. 208, § 49 (f), does not apply retroactively to alimony orders in divorce judgments that entered before March 1, 2012.  The matter is remanded to the Probate and Family Court for further proceedings consistent with this opinion.

So ordered.

_____

drafters in the final version.  The language now appears in uncodified § 4 (a) and incorporates the clarifying comments of the representatives that "alimony judgments entered before March 1, 2012 shall terminate only under such judgments" or "under a subsequent modification."

[10] George suggests that in Holmes v. Holmes, 467 Mass. 653, 661 n.9 (2014), we effectively confirmed that the alimony reform act does, in fact, apply retroactively to judgments issued prior to its effective date.  A footnote in that case, commenting on arguments by a party who did not appeal from the decision of a trial judge, was not intended to be dispositive of the question posed here.