## ELAINE M. HOLMES *vs.* KENNETH E. HOLMES.

Essex. December 3, 2013. - April 2, 2014.

Present: IRELAND, C.J., SPINA, CORDY, BOTSFORD, GANTS, DUFFLY, & LENK, JJ.

*Divorce and Separation,* Alimony, Modification of judgment. *Statute,* Amendment. *Words,* "General term alimony."

Discussion of the Alimony Reform Act of 2011, amending G. L. c. 208 by, inter alia, establishing presumptive termination dates for general term alimony based on the length of the marriage. [656-658]

This court concluded that the maximum presumptive duration of an award of general term alimony (based on the length of the marriage) commences on the issuance of the judgment declaring the termination of the marriage, and does not include the time period during which temporary alimony was paid. [658-660]

Statement that a judge may in her discretion order that an award of general term alimony terminate before the end of the presumptive maximum duration where the judge concludes that temporary alimony has been paid for an unusually long period of time or the recipient party has unfairly delayed final resolution of the case in an attempt to prolong the payment of such temporary alimony. [660-661]

A Probate and Family Court judge did not abuse her discretion in modifying a divorce judgment to order the husband to pay general term alimony for the maximum presumptive duration, declining to credit the time in which temporary alimony was paid in calculating the maximum presumptive duration, where there was no suggestion that the wife had delayed final resolution of the case; where the weekly amount of the temporary alimony and child support was approximately twenty-five per cent less than, inter alia, the amount paid in alimony under the modified judgment; and where the wife confronted health problems and had a limited earning capacity. [661]

COMPLAINT for divorce filed in the Essex Division of the Probate and Family Court Department on May 31, 2006.

The case was heard by *Amy L. Blake*, J., and a complaint for modification, filed on July 20, 2011, was heard by her.

The Supreme Judicial Court on its own initiative transferred the case from the Appeals Court.

*William Sanford Durland, III,* for the defendant.

*James M. Walsh* for the plaintiff.

GANTS, J. Under the Alimony Reform Act of 2011, St. 2011, c. 124 (reform act), "[i]f the length of the marriage is [twenty] years or less, but more than [fifteen] years, general term alimony shall continue for not more than [eighty] per cent of the number of months of the marriage" unless the judge makes a written finding that deviation beyond this time limit is required in the interest of justice. G. L. c. 208, § 49 (b) (4). The issue presented in this case is whether alimony paid under a temporary support order during the pendency of a divorce proceeding, pursuant to G. L. c. 208, § 17 (temporary alimony), must be included in calculating the maximum presumptive duration of general term alimony under § 49 (b). We conclude that temporary alimony is separate and distinct from general term alimony, and that the duration of temporary alimony is not included in calculating the maximum presumptive duration of general term alimony. We also conclude that, where temporary alimony is unusually long in duration or where the party receiving temporary alimony has caused unfair delay in the issuance of a final judgment in order to prolong the length of time in which alimony may be paid, a judge in her discretion may consider the duration of temporary alimony in determining the duration of general term alimony.

*Background.* Kenneth Holmes (husband) and Elaine Holmes (wife) were married on May 25, 1991, and have three children.[1] The wife filed a complaint for divorce on May 31, 2006. On June 12, 2006, and again on November 3, 2006, in accordance with the parties' written agreement, the judge ordered the husband to pay $368 per week in temporary alimony, and $600 per week in child support pending final adjudication of the divorce. The judgment of divorce, entered on October 9, 2008, in accordance with the parties' settlement agreement, ordered the husband to pay the wife $1,300 per week, of which $700 was classified as alimony and $600 as child support, until the death of the husband or the wife, or the wife's remarriage.

On July 20, 2011, the wife filed a complaint for modification

---

[1] At the time of the trial, all the children were adults. The elder son, although emancipated, resided with Kenneth Holmes (husband). The parties' younger son, who was nineteen years of age and in his first year at a community college, also resided with the husband. The parties' youngest child, a daughter, who was eighteen years of age and also in her first year at a community college, resided with Elaine Holmes (wife).

seeking an increase in weekly alimony, and the husband filed a counterclaim seeking a modification decreasing child support. The wife argued that she was entitled to an increase in alimony because of her cancer diagnosis and treatment, loss of employment, and the husband's substantial increase in income. The husband argued that he should pay less in child support because the parties' middle child, who had lived with the wife at the time of the judgment, was now residing with him.

After the effective date of the reform act, the judge issued a modified judgment. The judge declined to change the weekly amount paid by the husband to the wife under the divorce judgment, but ordered that all of it be paid as alimony, which conferred a tax advantage on the husband.[2] In addition, the judge modified the duration of alimony, ordering that the husband's payment obligation continue until the death of either party, the wife's remarriage, the husband's attainment of full social security retirement age, or October 7, 2020, whichever came first. In setting the termination date, the judge calculated the length of the marriage (fifteen years and seven days) and the maximum presumptive duration of general term alimony under the reform act for a marriage of this length (twelve years), and ordered alimony to continue, subject to other contingencies, for the maximum presumptive duration. The judge did not subtract the time period in which temporary alimony was paid (two years, three months, and twenty-five days) from her calculation of the maximum presumptive duration of general term alimony.

The husband filed a motion for relief from the judgment, arguing that the term of alimony should be calculated from the service of the divorce complaint rather than the judgment of divorce. The motion was denied. The husband filed a notice of

---

[2]Under Federal and Massachusetts tax law, the amount of alimony is deducted from the gross income of the provider spouse and added to the gross income of the recipient spouse, so that the latter pays any income tax due arising from the alimony income. See I.R.C. §§ 71, 215 (2012); C.P. Kindregan, Jr., M. McBrien, & P.A. Kindregan, Family Law and Practice § 53:15, at 1173 (4th ed. 2013) ("amount of the alimony deduction taken by the obligor on the federal tax return may also be deducted from gross income on the Massachusetts return"). In contrast, the amount paid in child support is not deducted from the gross income of the provider spouse. I.R.C. § 71(c)(1) (2012); C.P. Kindregan, Jr., M. McBrien, & P.A. Kindregan, *supra* at § 15.7 (child support is nondeductible to payor and nontaxable to payee).

appeal from the judgment and from the denial of his motion for relief from judgment. We transferred the husband's appeal to this court on our own motion. On appeal, the husband contends that the twelve years of alimony should begin in June, 2006, when he was first ordered to pay temporary alimony, not on the date of the judgment of divorce, and therefore should terminate in June, 2018, rather than in October, 2020.

*Discussion.* The reform act made several changes to the law governing alimony. See generally C. Kindregan, Reforming Alimony: Massachusetts Reconsiders Postdivorce Spousal Support, 46 Suffolk U.L. Rev. 13, 26 (2103). Two changes are relevant to the issue on appeal. First, the prior alimony statute, G. L. c. 208, § 34, as appearing in St. 1974, c. 565, recognized only one category of postjudgment alimony, which the reform act now classifies as "general term alimony," defined as "the periodic payment of support to a recipient spouse who is economically dependent." G. L. c. 208, § 48. The reform act established four distinct categories of alimony: general term alimony, rehabilitative alimony, reimbursement alimony, and transitional alimony. G. L. c. 208, § 48.[3]

Second, the prior alimony statute did not provide presumptive termination dates for alimony. See G. L. c. 208, § 34, as appearing in St. 1974, c. 565.[4] The reform act establishes presumptive

---

[3]Rehabilitative alimony is "the periodic payment of support to a recipient spouse who is expected to become economically self-sufficient by a predicted time, such as, without limitation, reemployment; completion of job training; or receipt of a sum due from the payor spouse under a judgment." G. L. c. 208, § 48. Reimbursement alimony is "the periodic or one-time payment of support to a recipient spouse after a marriage of not more than [five] years to compensate the recipient spouse for economic or noneconomic contribution to the financial resources of the payor spouse, such as enabling the payor spouse to complete an education or job training." *Id.* Transitional alimony is "the periodic or one-time payment of support to a recipient spouse after a marriage of not more than [five] years to transition the recipient spouse to an adjusted lifestyle or location as a result of the divorce." *Id.*

[4]Although the prior alimony statute did not expressly so provide, we declared that "an obligation to make periodic alimony payments ends automatically at the remarriage of the obligee or at the death of either party, without regard to the award's term as fixed in the decree or agreement, unless either (1) the original decree or agreement provides otherwise or the parties legally amend their agreement to provide otherwise, or (2) in the case of the obligor's death, the court makes written findings establishing that termination of the award

termination dates for general term alimony based on the length of the marriage.[5] General Laws c. 208, § 49 (*b*), provides:

"Except upon a written finding by the court that deviation beyond the time limits of this section are required in the interests of justice, if the length of the marriage is [twenty] years or less, general term alimony shall terminate no later than a date certain under the following durational limits:

"(1) If the length of the marriage is [five] years or less, general term alimony shall continue for not longer than one-half the number of months of the marriage.

"(2) If the length of the marriage is [ten] years or less, but more than [five] years, general term alimony shall continue for not longer than [sixty] per cent of the number of months of the marriage.

"(3) If the length of the marriage is [fifteen] years or less, but more than [ten] years, general term alimony shall continue for not longer than [seventy] per cent of the number of months of the marriage.

"(4) If the length of the marriage is [twenty] years or less, but more than [fifteen] years, general term alimony shall continue for not longer than [eighty] per cent of the number of months of the marriage."[6]

would work a substantial injustice because of facts not present in most cases." *Cohan* v. *Feuer*, 442 Mass. 151, 158 (2004) (adopting § 5.07 of American Law Institute, Principles of the Law of Family Dissolution: Analysis and Recommendations [2002], "as modified for consistency with current Massachusetts law").

[5] The "length of the marriage" is defined as "the number of months from the date of the legal marriage to the date of service of a complaint or petition for divorce or separate support duly filed in a court of the commonwealth or another court with jurisdiction to terminate the marriage; provided, however, that the court may increase the length of the marriage if there is evidence that the parties' economic marital partnership began during their cohabitation period prior to the marriage." G. L. c. 208, § 48.

[6] The Alimony Reform Act of 2011, St. 2011, c. 124 (reform act), does not establish a presumptive termination date for general term alimony where the length of the marriage is longer than twenty years. G. L. c. 208, § 49 (*c*) ("court may order alimony for an indefinite length of time for marriages for which the length of the marriage was longer than [twenty] years"). The

Although the reform act establishes presumptive termination dates for general term alimony, a judge is not obliged to order alimony for the presumptive maximum time period. Rather, in determining the appropriate duration of alimony, as well as its form and amount, "a court shall consider: the length of the marriage; age of the parties; health of the parties; income, employment and employability of both parties, including employability through reasonable diligence and additional training, if necessary; economic and noneconomic contribution of both parties to the marriage; marital lifestyle; ability of each party to maintain the marital lifestyle; lost economic opportunity as a result of the marriage; and such other factors as the court considers relevant and material." G. L. c. 208, § 53 (a). A judge in her discretion, applying these factors, may determine that the appropriate duration of alimony is *less than* the presumptive maximum without a written finding that deviation from the presumptive maximum is required in the interests of justice. A written finding is mandated under the reform act only where a judge orders general term alimony for a period of time that is *more than* the presumptive maximum. G. L. c. 208, § 49 (b) (written finding that deviation is required in interests of justice only where duration is "beyond the time limits of this section"). Moreover, under the reform act, even where a judge orders that alimony be paid for the presumptive maximum duration, the actual duration of alimony may be less, because "[g]eneral term alimony shall terminate upon the remarriage of the recipient or the death of either spouse," G. L. c. 208, § 49 (a), and shall also presumptively terminate when the payor spouse attains the "full retirement age." G. L. c. 208, § 49 (f).[7]

The reform act addresses only divorce judgments and the

___

reform act establishes different presumptive termination dates for the other types of alimony. "The alimony term for rehabilitative alimony shall be not more than [five] years," but may be extended on a complaint for modification "upon a showing of compelling circumstances." G. L. c. 208, § 50 (b). "Reimbursement alimony shall terminate upon the death of the recipient or a date certain." G. L. c. 208, § 51 (a). "Transitional alimony shall terminate upon the death of the recipient or a date certain that is not longer than [three] years from the date of the parties' divorce . . . ." G. L. c. 208, § 52 (a).

[7]The full retirement age is defined as "the payor's normal retirement age to be eligible to receive full retirement benefits under the United States Old Age, Survivors, and Disability Insurance program," commonly known as Social

modification of such judgments; it does not address any matter that may arise between the filing of the complaint for divorce and the issuance of the judgment. Specifically, it did not amend, and did not even reference, G. L. c. 208, § 17, which provides for the payment of temporary alimony during the pendency of a divorce action.[8]

To determine whether the Legislature intended that the presumptive duration of general term alimony commence on the date that temporary alimony was first awarded rather than the date of the award of alimony in the judgment of divorce, we look first to the language of the relevant statute, which is generally the clearest window into the collective mind of the Legislature. *Commonwealth* v. *Nanny,* 462 Mass. 798, 801-802 (2012), quoting *International Fid. Ins. Co.* v. *Wilson,* 387 Mass. 841, 853 (1983) ("primary source of insight into the intent of the Legislature is the language of the statute"). Each of the provisions of § 49 (*b*) setting forth the maximum presumptive duration of alimony based on the length of the marriage states that "general term alimony shall continue for not longer than" a fixed percentage of the number of months of the marriage. General term alimony is one of four forms of alimony, and the form of alimony is not determined by the judge until the issuance of the judgment of divorce. Therefore, general term alimony may commence only on the issuance of the judgment declaring the termination of the marriage. Temporary alimony is not general term alimony; § 17 "by its express terms assumes that the relationship of husband and wife has not been legally terminated." *Baird* v. *Baird,* 311 Mass. 329, 332 (1942), quoting *Wallace* v. *Wallace,* 273 Mass. 62, 64 (1930). Therefore, it is

---

Security. G. L. c. 208, § 48. The reform act provides that a judge in her initial judgment may set an alimony termination date beyond the payor spouse's full retirement age for good cause shown, setting forth in writing the reasons for the deviation. G. L. c. 208, § 49 (*f*) (1). A judge may also modify an initial judgment to extend the duration of alimony beyond the payor spouse's full retirement age if the judge enters written findings "of a material change of circumstance that occurred after entry of the alimony judgment," and provides reasons "that are supported by clear and convincing evidence." G. L. c. 208, § 49 (*f*) (2).

[8] General Laws c. 208, § 17, provides in pertinent part that the "court may require either party to pay into court for the use of the other party during the pendency of the action an amount to enable him to maintain or defend the action, and to pay to him alimony during the pendency of the action."

reasonable to infer that where the Legislature specified the maximum presumptive duration of "general term alimony," it did not intend that its duration include the time period where temporary alimony was paid.

The husband notes that "alimony" is defined in § 48 as "the payment of support from a spouse, who has the ability to pay, to a spouse in need of support for a reasonable length of time, under a court order," and argues that temporary alimony falls within this definition because it is described in § 17 as "alimony" and is paid pursuant to a court order. We need not decide whether the Legislature intended that temporary alimony fall within the rubric of "alimony" as defined in § 48, because the Legislature in § 49 (*b*) specified the presumptive maximum duration of "general term alimony," not "alimony," and thereby manifested its intention to exclude anything other than "general term alimony" from the calculation of the presumptive maximum duration.

The husband also argues that, if temporary alimony is not included in the calculation of the presumptive maximum duration of general term alimony, a spouse receiving temporary alimony would have a "disincentive" to efficiently and effectively prosecute the divorce case and "the ultimate incentive" to delay or prolong discovery and settlement discussions. He contends that this would be contrary to the public policy of the Commonwealth, which "favors settlement of property disputes resulting from a divorce through equitable, enforceable separation agreements." *Moore* v. *Moore*, 389 Mass. 21, 24 (1983). We recognize that a spouse receiving temporary alimony who seeks to maximize the potential duration of alimony payments may have an incentive to prolong the divorce case and delay settlement. But a spouse who acts in this way does so at his or her peril because, as noted earlier, a judge in her discretion may order that general term alimony terminate before the presumptive maximum duration. Where a judge concludes that temporary alimony has been paid for an unusually long period of time or that the recipient spouse has unfairly delayed final resolution of the case in an attempt to prolong the payment of alimony, a judge in her discretion may determine that the appropriate duration of alimony is below the presumptive maximum. See G. L. c. 208, § 53 (*a*) (in determining appropriate

duration of alimony, judge may consider other factors that are "relevant and material").

The husband also contends that the judge abused her discretion by modifying the judgment to order the payment of general term alimony for the maximum presumptive duration and by not crediting the time in which temporary alimony was paid in calculating its duration. We conclude that the judge did not abuse her discretion. "[A] judge enjoys considerable discretion in fashioning an appropriate modification judgment." *Pierce* v. *Pierce*, 455 Mass. 286, 293 (2009). Here, there is no suggestion that the wife delayed final resolution of the case. Moreover, the amount agreed to be paid in temporary alimony and child support ($968 per week) was approximately twenty-five per cent less than the amount paid under the initial divorce judgment and modified judgment ($1,300 per week). When one also considers the health problems confronted by the wife and her limited capacity to earn, the judge did not abuse her discretion in deciding that the appropriate duration of general term alimony was the maximum presumptive duration.[9]

*Amended judgment affirmed.*

---

[9]Although the wife did not appeal from the modified judgment, we consider her argument that the judge should not have imposed any durational limit because the durational limits in the reform act did not apply to her judgment of divorce, which was issued before the effective date of the reform act. The reform act provides that the new durational limits shall apply prospectively, but "[e]xisting alimony judgments which exceed the durational limits under [G. L. c. 208, § 49,] shall be modified upon a complaint for modification without additional material change of circumstance, unless the court finds that deviation from the durational limits is warranted." St. 2011, c. 124, § 4 (*a*), (*b*). However, under the phased schedule provided in the reform act, a payor spouse who, like the husband here, was married to the alimony recipient for more than fifteen years but less than twenty years may not file a complaint for modification "solely because the existing alimony judgment exceeds the durational limits of [G.L. c. 208, § 49,]" before September 1, 2015. St. 2011, c. 124, § 5 (4). The complaint for modification in this case was filed by the recipient spouse (wife), not the payor spouse (husband), and the husband's counterclaim was not based solely on the absence of a durational limit in the divorce judgment. Therefore, the complaint for modification was not filed "solely because" the husband sought to limit the duration of alimony, and its filing did not violate § 5 (4). Where the complaint for modification was properly before the judge, she was obligated under § 4 (*b*) to modify the judgment so that the duration of alimony did not exceed the limit established in G. L. c. 208, § 49 (*b*) (4), unless the judge found that deviation from the durational limit was warranted.