NOTICE:  All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports.  If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

SJC-12102


JACQUELYN D. SNOW  vs.  WINTHROP E. SNOW.



Berkshire.     October 6, 2016. - February 9, 2017.

Present:  Gants, C.J., Botsford, Lenk, Hines, Gaziano, Lowy, &
Budd, JJ.


Divorce and Separation, Alimony, Foreign divorce.



Complaint filed in the Berkshire Division of the Probate
and Family Court Department on August 25, 2014.

The case was heard by David J. Dacyczyn, J.

The Supreme Judicial Court on its own initiative
transferred the case from the Appeals Court.


Brigid M. Hennessey (Buffy D. Lord also present) for the
husband.
Lindsay D. DiSantis (David R. Cianflone also present) for
the wife.


GANTS, C.J.  The wife in this case did not pursue her claim

for alimony during the divorce proceeding, but sought and

obtained an alimony award more than four years after the divorce

judgment.  We conclude that, in such circumstances, the

durational limit of general term alimony under G. L. c. 208, § 49 (b), starts to run on the date that the alimony was awarded, not on the date of the divorce judgment or on the date temporary alimony was awarded. We also conclude that the income earned from overtime pay must be considered in making an initial alimony award determination under G. L. c. 208, § 34, regardless of whether that determination is made before or after the divorce judgment. Finally, we conclude that, where a judge awards alimony under § 34, the judge must specifically address the issue of health insurance coverage for the recipient spouse as required by § 34.

Background. Jacquelyn D. Snow (wife) and Winthrop E. Snow (husband) were married in New York in 1991, and separated in January, 2008. They have no children. The husband commenced the divorce action in the New York Supreme Court in May, 2008, claiming "constructive abandonment" by the wife.[1] The wife was initially represented by counsel, but her attorney's motion to withdraw was allowed by the judge in September, 2009. After the wife failed to answer the husband's verified complaint, comply with discovery obligations, and appear for her deposition, the judge found her in default and entered a judgment for divorce on July 21, 2010, in accordance with N.Y. Dom. Rel. Law § 211

---

[1] In New York, the Supreme Court is the supreme trial court. See N.Y. Const. art. VI, §§ 3, 7.

(McKinney 2016) ("A final judgment shall be entered by default for want of appearance or pleading, . . . only upon competent oral proof or upon written proof that may be considered on a motion for summary judgment").  As to alimony (which New York characterizes as "maintenance"), the judge found that the wife requested maintenance of $1,000 per week on her statement of net worth "but did not pursue the claim," so no maintenance was awarded.

On August 25, 2014, the wife filed a pro se complaint for modification of a foreign divorce in the Probate and Family Court in Massachusetts, where both parties were then domiciled.[2] She asked that the final judgment of divorce be modified "with respect to alimony, which was not addressed."  She explained that circumstances had changed in that the husband had been supporting her with payments of $1,000 per week since September, 2013, but he had stopped such payments in June, 2014, and, as a result, she was homeless and living in her automobile.

On January 22, 2015, the judge entered a temporary alimony order awarding the wife $850 per week, commencing on January 23, 2015.  After trial, the judge entered a "Judgment of Modification" on May 5, 2015, awarding the wife $810 per week in general term alimony, to commence on May 8, 2015, until December

---

[2] After filing the complaint, the wife was represented by counsel.

21, 2029, or the death of one of the parties, whichever came first.  The judge also ordered the husband to secure a life insurance policy, designating the wife as the beneficiary, in the amount of $520,000, to be reduced by $40,000 annually during the alimony payment period.

In determining the duration of alimony, the judge found that the length of the marriage was approximately 224 months (eighteen years and eight months) and that the durational limit of alimony under G. L. c. 208, § 49 (b) (4), was 179 months (fourteen years and eleven months).[3]  The judge ordered alimony for the full durational limit, commencing on the date of the first temporary alimony payment.

In determining the amount of general term alimony, the judge considered the factors set forth in G. L. c. 208, § 53 (a),[4] and determined that alimony should be approximately thirty-

---

[3] Under G. L. c. 208, § 49 (b) (4), the durational limit of general term alimony for a marriage of more than fifteen but less than or equal to twenty years is no longer than eighty per cent of the number of months of the marriage.

[4] General Laws c. 208, § 53 (a), provides:  "In determining the appropriate form of alimony and in setting the amount and duration of support, a court shall consider:  the length of the marriage; age of the parties; health of the parties; income, employment and employability of both parties, including employability through reasonable diligence and additional training, if necessary; economic and non-economic contribution of both parties to the marriage; marital lifestyle; ability of each party to maintain the marital lifestyle; lost economic opportunity as a result of the marriage; and such other factors as the court considers relevant and material."

five per cent of the difference between the husband's and wife's weekly incomes. The judge calculated the husband's income as his then-current base pay; the judge did not include any overtime in the calculation because he found that overtime income did not significantly affect the parties' economic status at "the time of the divorce judgment and throughout the marriage."

The judge did not address the issue of health insurance, but found that the wife was "not eligible for health insurance through the husband's employer at this time."

Both parties appealed from the judgment, and we transferred the case to this court on our own motion. On appeal, the husband contends that the judge erred by commencing the durational limit of alimony on the date of the first temporary alimony payment (January 23, 2015) rather than on the date of the New York judgment of divorce (July 21, 2010). The wife agrees that the judge erred in his selection of the commencement date, but she claims that the appropriate commencement date should have been the date of the award of general term alimony in the judgment of modification (May 5, 2015). The wife also contends that the judge erred in failing to include overtime pay in his alimony calculation and in failing to make a determination as to health insurance coverage.

Discussion.  Before we address the parties' claims of error, we must first address a preliminary question that affects these claims:  was the wife's petition for alimony a complaint for modification of an alimony judgment under G. L. c. 208, § 37, or an initial complaint for alimony under G. L. c. 208, § 34?

There are several relevant differences between the two forms of complaint.  Where a spouse files an initial complaint for alimony, before or after the divorce, the judge is required to consider all the factors identified in G. L. c. 208, § 53 (a), in determining the amount and duration of alimony. G. L. c. 208, § 53 (a).  See George v. George, 476 Mass. 65, 71 (2016), citing Duff-Kareores v. Kareores, 474 Mass. 528, 535 (2016).  The spouse seeking alimony for the first time need not demonstrate a material change in circumstances.  See Cherrington v. Cherrington, 404 Mass. 267, 270 (1989); Kinosian v. Kinosian, 351 Mass. 49, 52 (1966); Talbot v. Talbot, 13 Mass. App. Ct. 456, 460 (1982).  Where the issue of alimony was earlier adjudicated and the judge made the requisite findings based on the statutory factors, modification of the amount or duration of an award of general term alimony may occur only where a party is able to demonstrate "a material change of circumstances warranting modification."  G. L. c. 208, § 49 (e).  See Buckley v. Buckley, 42 Mass. App. Ct. 716, 719 (1997) ("where the trial

court has previously passed on the issue of alimony in the divorce judgment," any change in alimony must be accomplished through complaint for modification).

Here, the wife, before she retained counsel, characterized her complaint as one seeking modification.  But the title or form of the complaint is not dispositive; "it is to be treated in accordance with its essential substance."  Baird v. Baird, 311 Mass. 329, 331 (1942) (petition that had been described as "for modification" treated as initial complaint for alimony). Nor is the timing of the complaint conclusive; under § 34, an initial complaint for alimony may be made either in the divorce action or "upon a complaint in an action brought at any time after a divorce."

The husband contends that the issue of alimony was adjudicated in the New York divorce action because the wife initially requested maintenance and the judge awarded no maintenance.  But the judge made clear that the wife "did not pursue the claim" for maintenance, and declared that he did not award maintenance to the wife because she was capable of self-support and ultimately did "not seek maintenance" from the husband.  If the request for alimony had been pursued, the judge in New York, like his counterpart in Massachusetts, would have had a statutory obligation to consider specific factors in determining the duration and amount of maintenance.  See N.Y.

Dom. Rel. Law § 236(6) (McKinney Supp. 2010). But the judge in New York did not address any of those factors in denying maintenance because, at the time of judgment, the wife no longer sought alimony. "We do not believe that, if alimony is not requested during the divorce proceedings, we should automatically assume that it was not warranted in the circumstances or hold that each party has waived all opportunity to demonstrate that it was then warranted." Cherrington, 404 Mass. at 270 n.6. Where, as here, the wife did not pursue her request for maintenance and the judge in New York made no findings based on the statutory factors in awarding no maintenance, we conclude that the wife's complaint in Massachusetts was an initial complaint for alimony rather than a complaint for modification.[5]

1. Commencement of durational limit. Under the Alimony Reform Act of 2011, St. 2011, c. 124 (reform act), "[i]f the length of the marriage is [twenty] years or less, but more than [fifteen] years, general term alimony shall continue for not longer than [eighty] per cent of the number of months of the

_____

[5] Our conclusion would be different if the New York judge had considered each of the statutory factors and determined based on the circumstances that no maintenance award was appropriate. In such a case, the spouse who sought alimony would have had a full and fair adjudication on the merits of the claim for alimony, and factual findings would have been made that a subsequent judge could consider in deciding whether there has been a material change in circumstances justifying modification of that alimony judgment.

marriage" unless the judge makes a written finding that deviation beyond this time limit is required in the interests of justice.  G. L. c. 208, § 49 (b) (4).  In Holmes v. Holmes, 467 Mass. 653, 659 (2014), we concluded that the durational limit starts to run from the date of the award of general term alimony in the judgment of divorce rather than the date that temporary alimony was first awarded.  We reasoned that "general term alimony may commence only on the issuance of the judgment declaring the termination of the marriage," and that "[t]emporary alimony is not general term alimony" because it may commence before the spousal relationship has been legally terminated.  Id.

In Holmes, however, alimony was sought in the divorce complaint and general term alimony was awarded as part of the divorce judgment; here, the divorce judgment issued before the initial complaint for alimony was filed and before any alimony was awarded.  The husband relies on this distinction in claiming that the durational limit is triggered by the issuance of the divorce judgment in New York, not the award of temporary or general term alimony.  We disagree.

To determine when the Legislature intended the durational limit of general term alimony to commence, "we look first to the language of the relevant statute, which is generally the clearest window into the collective mind of the Legislature."

Holmes, 467 Mass. at 659. "'[A] statute must be interpreted according to the intent of the Legislature ascertained from all its words construed by the ordinary and approved usage of the language, considered in connection with the cause of its enactment, the mischief or imperfection to be remedied and the main object to be accomplished, to the end that the purpose of its framers may be effectuated.'" Rodman v. Rodman, 470 Mass. 539, 541 (2015), quoting Commonwealth v. Figueroa, 464 Mass. 365, 368 (2013).

Under G. L. c. 208, § 49 (b), "general term alimony shall continue for not longer than" a fixed percentage of the number of months of the marriage. General term alimony cannot "continue" unless it has previously been awarded. The plain language of the statute makes the commencement of the durational limitation period dependent on the award of general term alimony. See Holmes, 467 Mass. at 659. Thus, until a judge has awarded general term alimony, the duration of general term alimony does not begin to run.

That same plain language dictates that the durational limits commence on the award of general term alimony, not on the award of temporary alimony, which, as noted in Holmes, is separate and distinct from general term alimony. In determining that the durational limit commenced on the award of temporary alimony, the judge relied upon the mistaken premise that the

wife's action was a complaint for modification rather than an initial complaint for alimony. The judge further noted that temporary relief was warranted because of the wife's "dire financial predicament," and declared that the husband should be "given credit against the alimony duration limits." Even though the judge erred in concluding that the durational limits commenced on the award of temporary alimony, nothing bars the judge on remand from determining that the husband should be credited for his payment of temporary alimony and that alimony payments should end on or about the date he declared as the durational limit (December 21, 2029). A judge in his or her discretion, applying the requisite factors in § 53 (a), "may determine that the appropriate duration of alimony is less than the presumptive maximum without a written finding that deviation from the presumptive maximum is required in the interests of justice" (emphasis in original). Holmes, 467 Mass. at 658. See G. L. c. 208, § 53 (a) (in determining appropriate duration of alimony, judge may consider other factors that are "relevant and material").

2. Overtime. In adjudicating an initial complaint for alimony, the income of both parties is one of the statutory factors that a judge is required to consider, and the amount of general term alimony "should not generally exceed the recipient's need or [thirty] to [thirty-five] per cent of the

difference between the parties' gross incomes established at the time of the order being issued."  G. L. c. 208, § 53 (a), (b).  With exceptions not relevant here, "income shall be defined as set forth in the Massachusetts child support guidelines."  G. L. c. 208, § 53 (b).  See Zaleski v. Zaleski, 469 Mass. 230, 242-244 (2014).  Under the guidelines, "income is defined as gross income from whatever source," and specifically includes "salaries, wages, [and] overtime."  Child Support Guidelines § I(A)(1)(a) (Aug. 1, 2013).  Therefore, in determining an award of alimony on an initial complaint for alimony, a judge must consider the parties' income, including overtime.

However, in adjudicating a complaint for modification of an alimony judgment, "[i]ncome from . . . overtime work shall be presumed immaterial to alimony modification if . . . the . . . overtime began after entry of the initial order."  G. L. c. 208, § 54 (b).  Because the judge erroneously characterized the wife's petition as a complaint for modification, the judge in determining the alimony award considered only the husband's overtime income "[a]t the time of the divorce judgment and throughout the marriage"; he did not consider the husband's overtime income after the divorce judgment and at the time of trial on what we now recognize as the wife's initial complaint for alimony.  This was error.  On remand, the judge must consider the husband's postdivorce judgment overtime income in

determining the award of alimony on the wife's initial complaint for alimony. Cf. George, 476 Mass. at 70 ("a judge should evaluate the circumstances of the parties in the here and now").

3. Health insurance coverage. The wife claims that the judge erred in failing to make a determination as to health insurance coverage. Under the New York divorce judgment, the wife is responsible for securing her own health insurance. The Massachusetts judge recognized the practical consequences of that aspect of the judgment, finding that the wife had not seen a doctor since 2002 and had not seen a dentist since 1997. However, apart from noting that the wife is not presently eligible for health insurance through the husband's employer, the judge did not address the issue of how the wife would obtain health insurance coverage, and the judgment did not mention it. Implicitly, the wife remains responsible for securing her own health insurance coverage. We agree with the wife that, where the judge was adjudicating an initial complaint for alimony, the judge erred in failing explicitly to make a determination regarding the wife's health insurance coverage.

Under § 34, the statute that governs the adjudication of an initial complaint for alimony:

"When the court makes an order for alimony on behalf of a spouse, said court shall determine whether the obligor under such order has health insurance or other health coverage available to him through an employer or organization or has health insurance or other health

> coverage available to him at reasonable cost that may be
> extended to cover the spouse for whom support is ordered.
> When said court has determined that the obligor has such
> insurance or coverage available to him, said court shall
> include in the support order a requirement that the obligor
> do one of the following:  exercise the option of additional
> coverage in favor of the spouse, obtain coverage for the
> spouse, or reimburse the spouse for the cost of health
> insurance.  In no event shall the order for alimony be
> reduced as a result of the obligor's cost for health
> insurance coverage for the spouse."

G. L. c. 208, § 34.

We describe the legislative evolution of these provisions.
In 1983, as part of his over-all effort to address chronic
shortfalls in the collection of State revenues, Governor Michael
Dukakis proposed legislation that he characterized as a "Revenue
Enforcement and Protection Program."  See J. Brouder & G.
McDowell, Paying for Massachusetts:  Tax Evasion and the
Underground Economy 10 (1983), available at
https://archive.org/details/payingformassach00mass
[https://perma.cc/PQ3J-7AA8] (Brouder & McDowell).  Among the
legislation that emerged from that proposal was St. 1983,
c. 233, § 77, which amended G. L. c. 208, § 34, by adding the
following provision:

> "When the court makes an order for alimony on behalf of a
> spouse, and such spouse is not covered by a private group
> health insurance plan, said court shall determine whether
> the obligor under such order has health insurance on a
> group plan available to him through an employer or
> organization that may be extended to cover the spouse for
> whom support is ordered.  When said court has determined
> that the obligor has such insurance, said court shall
> include in the support order a requirement that the obligor

exercise the option of additional coverage in favor of such spouse."

The Department of Revenue estimated that this provision, along with ten other sections related to divorce, alimony, and child support, would save $4 million per year in State expenditures. Brouder & McDowell, supra at 35.

Five years later, in 1988, Governor Dukakis proposed legislation for what he called "the first universal health care program in the nation; a commitment to assure health security for all of our citizens by 1992."  Letter from Michael S. Dukakis to Senate and House of Representatives (Jan. 6, 1988) (submitted with 1988 House Doc. No. 300).  Among the legislation that emerged from that over-all effort was St. 1988, c. 23, § 67, which amended § 34 by deleting the two sentences added by St. 1983, c. 233, § 77, and replacing them with the three sentences regarding health insurance in the current § 34, whose language was left unchanged by the 2011 reform act.

The reform act, however, included St. 2011, § 124, § 3, a new statute which inserted c. 208, § 53, into the General Laws and which provides in relevant part:

> "In setting an initial alimony order, or in modifying an existing order, the court may deviate from duration and amount limits for general term alimony and rehabilitative alimony upon written findings that deviation is necessary. Grounds for deviation may include:  . . . (3) whether the payor spouse is providing health insurance and the cost of health insurance for the recipient spouse . . . ."

G. L. c. 208, § 53 (e).

From this legislative history, we discern that the legislative purpose behind St. 1983, c. 233, § 77, was to reduce the burden on the public arising from divorced spouses without health insurance. The substantive scope of St. 1988, c. 23, § 67, was broader in keeping with the over-all purpose of that legislation to move toward universal health coverage at a reasonable cost.

We do not attempt in this opinion to harmonize the potential conflict between § 34, which bars a judge from reducing the amount of alimony because of the expense incurred in providing health insurance coverage for the recipient spouse, and § 53 (e), which expressly allows a judge to deviate from the amount limits for general term alimony because of the cost incurred by the payor spouse in providing health care coverage to the recipient spouse. Nor do we opine as to whether the judge's obligation to order the provision of health insurance coverage under § 34 applies where the recipient spouse is eligible for such coverage only through the Health Connector under the Patient Protection and Affordable Care Act, P.L. 111-148, 124 Stat. 119 (2010), or its Massachusetts counterpart, "An Act providing access to affordable, quality, accountable health care," St. 2006, c. 58, both of which were enacted long after the relevant provisions of § 34. The parties did not brief

these issues, and no amicus brief was submitted.  Rather, we limit our opinion to the claim of error presented by the wife, and conclude that, where a judge awards alimony under § 34, the judge must specifically address the issue of health insurance coverage for the recipient spouse by making the determination required under § 34, and, where appropriate under the statute, by including the provision of health insurance coverage within the judgment.  See Zeh v. Zeh, 35 Mass. App. Ct. 260, 267-268 (1993) ("Given these statutory requirements and the critical importance and expense of health insurance, a judge's findings and orders under § 34 expressly should reflect compliance with the statute and make provision for the requisite coverage or reimbursement").

Conclusion.  The case is remanded to the Probate and Family Court with instructions to reevaluate the alimony judgment in light of our opinion and enter a new judgment accordingly.

So ordered.