The plaintiff husband appeals from an amended judgment of divorce, claiming that the Probate and Family Court judge erred in the award of alimony (1) by including the needs of the defendant wife's children (from a previous marriage) in analyzing the wife's needs; (2) by ordering the husband to provide health insurance for the wife although she already is insured through Medicare; and (3) by inviting the wife to file a complaint for modification of alimony at the end of the stated term. The husband also challenges the valuation and division of his interest in a family-owned business (company).[2] We affirm.
Alimony. In reviewing "an alimony award under G. L. c. 208, §§ 48 - 55 [Alimony Reform Act (Act) ], an appellate court conducts a two-step analysis. Adams v. Adams, 459 Mass. 361, 371 (2011). First, we examine the trial judge's findings to determine whether all relevant factors were considered (and whether irrelevant factors were disregarded). See Rice v. Rice, [372 Mass. 398, 401-402 (1977) ]; Bowring v. Reid, 399 Mass. 265, 267 (1987). Next, we decide whether the rationale underlying the judge's conclusions is apparent and whether these 'flow rationally from the findings and rulings.' Williams v. Massa, 431 Mass. 619, 631 (2000). We do not substitute our judgment for that of the [trial judge] but, rather, 'scrutinize without deference the propriety of the legal criteria employed by the trial judge and the manner in which those criteria were applied to the facts.' Iamele v. Asselin, 444 Mass. 734, 741 (2005). Furthermore, because the judge has considerable discretion, determinations as to alimony and property division will not be reversed unless plainly wrong and excessive." Hassey v. Hassey, 85 Mass. App. Ct. 518, 523-524 (2014).
For purposes of calculating the term of alimony, the parties were married for seventy-four and one-half months (from March 25, 2007, to service of the complaint for divorce on June 17, 2013), and lived an upper middle-class lifestyle during the marriage. The judge found that the wife's financial statement submitted at trial "accurately reflect[s] the weekly expenses necessary to support and provide the wife with a reasonable standard of living." In his explicit and detailed findings, the judge determined that the wife's sole source of income, her monthly Social Security Disability Income (SSDI) benefit, "is not adequate to meet the financial needs of the wife nor to sufficiently support her to maintain a style of life equivalent to or approaching the style of life maintained by the parties during the marriage."[3] ,[4] The wife's weekly expenses, minus her SSDI income, leave the wife with a weekly deficit. As a result, the judge concluded that, but for an award of alimony to the wife, "she will likely be left a public charge." Because the husband has the ability to pay, the judge fashioned an alimony order that reflects the amount needed by the wife to cover the deficit in her weekly expenses, and prevent her from becoming a public charge.[5] "[I]f a supporting spouse has the ability to pay, the recipient spouse's need for support is generally the amount needed to allow that spouse to maintain the lifestyle he or she enjoyed prior to termination of the marriage." Frost-Stuart v. Stuart, 90 Mass. App. Ct. 366, 369 (2016), quoting from Pierce v. Pierce, 455 Mass. 286, 296 (2009).
The husband argues that the judge erred in three respects in determining the alimony award. First, he claims that the judge considered irrelevant factors in analyzing the wife's needs-specifically, by including the needs of the wife's children (and grandchild) from a previous marriage, and the amounts attributable to her uninsured medical expenses.[6] This argument lacks merit.
It is apparent from this record that the judge gave thoughtful regard to many factors, including both the mandatory and discretionary factors outlined in the Act.[7] In determining the basis for calculating the alimony award, the judge subtracted the wife's weekly SSDI income from her "accurately reflect[ed] weekly expenses," determining that the wife is left with a weekly deficit of $1,068. Based on the discretion afforded by the Act, the judge could have awarded the wife thirty to thirty-five percent of the difference in the parties' gross income. This would have resulted in a weekly alimony award of more than double that actually ordered. See G. L. c. 208, § 53(b ). Instead, however, the judge concluded that a needs-based alimony award would be more appropriate in providing the wife suitable income to maintain the standard of living she had at the time of the separation that led to the divorce. See Young v. Young, 478 Mass. 1, 6-8 (2017). As for the husband's challenge to specific expenses for the minor children who were not born of the marriage, at trial, he did not challenge those expenses, which were listed on the wife's financial statement. As a result, this portion of his argument is waived. See Smith v. Sex Offender Registry Bd., 65 Mass. App. Ct. 803, 810 (2006).
Second, the husband argues that the judge abused his discretion in ordering the husband to continue to provide health insurance for the benefit of the wife, despite the fact that she receives health care benefits through Medicare. This argument also fails. "[W]here a judge awards alimony under § 34, the judge must specifically address the issue of health insurance coverage for the recipient spouse by making the determination required under § 34, and, where appropriate under the statute, by including the provision of health insurance coverage within the judgment." Snow v. Snow, 476 Mass. 425, 434 (2017). See Zeh v. Zeh, 35 Mass. App. Ct. 260, 268 (1993) ("Given these statutory requirements and the critical importance and expense of health insurance, a judge's findings and orders under § 34 expressly should reflect compliance with the statute and make provision for the requisite coverage or reimbursement"). See also G. L. c. 208, §§ 34, 53(e )(3).
Here, the judge properly addressed the issue of continued health care coverage for the wife. The judge specifically found that, according to the husband's financial statement, his company provides, at no cost to him, private health insurance as a perquisite of his employment. The judge also determined that the husband's financial circumstances did not support a reduction in the alimony award based on the husband's obligation to continue providing health insurance to the wife. It was well within the judge's broad discretion to decline to reduce the alimony award for this purpose. See G. L. c. 208, § 53(e )(3).
Third, and finally, the husband argues that the judge erred by inviting the wife to file a modification complaint seeking a continuation of alimony if, at the end of the durational period, her disability continues. The husband agrees that the wife is currently disabled, but claims that if she remains disabled at the end of the alimony term there would be no change in circumstances to warrant a modification. We decline to reach the argument, as it should be addressed by the judge in the first instance, assuming that the wife does in fact seek a modification.
In his findings, the judge stated that, "[w]hile finding that the wife presents as suffering from disabling conditions today, the court cannot find that the wife's current array of medical conditions will all still be present three years and seven months from the date of judgment. Consequently, the court cannot find that there exists today a sufficient basis to warrant deviation for payment of alimony beyond the durational period of three years and seven months."
Though the judge stated in his rationale that he would look "favorably" upon the wife's future modification complaint, he in no way relieved the wife of her burden to prove by clear and convincing evidence a material change in circumstances-that is, at the end of the durational period, to prove that her disability is continuing or permanent. See Zaleski v. Zaleski, 469 Mass. 230, 235 (2014). In assessing a change in circumstances as the possible basis for an alimony modification, the judge will have to consider the same factors that were used in the initial award of alimony under G. L. c. 208, § 34, as well as the wife's need for support and the husband's ability to pay. See Pierce, 455 Mass. at 293. In addition, because any future modification will require court approval, the disputed order is not, as the husband argues, a prohibited self-modifying order. See Hassey, 85 Mass. App. Ct. at 526-528. We see no error in the alimony award, and conclude that it is neither wrong nor excessive and, in fact, "flow[s] rationally from the findings and rulings." Vedensky v. Vedensky, 86 Mass. App. Ct. 768, 775 (2014), quoting from Williams v. Massa, 431 Mass. at 631.
Business valuation. The husband also argues that the judge erred in valuing and dividing the husband's interest in his family's business. He agrees that the wife is entitled to half the value of the part of the business interest he acquired during the marriage, but challenges the judge's calculation of that interest. We note that a judge has "broad discretion as to the division of property, Kittredge v. Kittredge, 441 Mass. 28, 43-44 (2004), and we will only disturb his rulings if they are plainly wrong and excessive. Redding v. Redding, 398 Mass. 102, 107 (1986)." Wolcott v. Wolcott, 78 Mass. App. Ct. 539, 543 (2011). The "[v]aluation of a business is a question of fact.... Thus, the standard is whether the judge's findings were clearly erroneous." Bernier v. Bernier, 449 Mass. 774, 785 (2007). "The judge may not, however, reach a valuation that is materially at odds with the totality of the circumstances." Ibid.
Here, the judge adopted the business valuation ($3,684,000) offered by the husband;[8] there was no expert testimony presented valuing the company. In July, 2004, the husband, along with his two siblings, purchased (for two million dollars) the family business from their father in accordance with the terms of a fifteen-year promissory note; at that time, the husband purchased his twenty-four and one-half percent interest in the company, to be paid in monthly installments over the life of the note (or until 2019). Based on the husband's stated value, which the court adopted, the judge calculated the husband's twenty-four and one-half percent interest to have a value of $902,580.
According to the husband, in 2004 he began making monthly installment payments of $2,722.22 toward his purchase obligation of $490,000; due to the increasing success of the company, he was able to accelerate his payment schedule, fully paying off his obligation by January, 2015.[9] The installment payments made during the marriage totaled $405,611 representing eighty-three percent of the husband's purchase obligation. In finding that an equal division of all assets acquired during the marriage was appropriate under the circumstances in this case, a finding that the husband does not contest, the judge reasonably determined that the wife is entitled to one-half of the value of the husband's interest in the company, purchased during the marriage, or $373,532.73. This record amply supports the judge's calculations.[10]
Accordingly, we see no error in the judge's valuation of the husband's interest in the business or the division of that portion of his interest acquired during the marriage. Nor do we see any error in the calculation of the alimony award.
Amended judgment affirmed.
Orders dated December 3, 2015, denying postjudgment motions affirmed.

The husband also appealed from the orders denying his motions to amend the judge's findings and to amend the judgment, but makes no separate argument in his brief as to either motion and, thus, any such issue is now deemed waived. See Gutierrez v. Massachusetts Bay Transp. Authy., 442 Mass. 1041, 1042-1043 (2004).

The judge found that the wife currently was incapable of supporting herself through employment in her former field, as indicated by the Social Security Administration determination that she was totally disabled.

The judge did not include in the wife's income, for the purpose of calculating an alimony award, the SSDI dependency benefit she received for the sole benefit of her dependent children.

In determining the husband's gross income on which to base the alimony award, the judge included certain "in-kind" compensation as well as specific perquisites received from his employer. "Subject to subsection (c ) [of G. L. c. 208, § 53 ], income shall be defined as set forth in the Massachusetts child support guidelines." G. L. c. 208, § 53(b ). Under the guidelines, "income is defined as gross income from whatever source," and specifically includes "salaries," "bonuses," "interest and dividends," and "perquisites of in-kind compensation to the extent that they represent a regular source of income." Child Support Guidelines § I(A) (Aug. 1, 2013). See Snow v. Snow, 476 Mass. 425, 431 (2017).

The husband is not the legal father of the wife's minor children; as a result, child support is not included in the amended judgment.

General Laws c. 208, § 53(a ), provides: "In determining the appropriate form of alimony and in setting the amount and duration of support, a court shall consider: the length of the marriage; age of the parties; health of the parties; income, employment and employability of both parties, including employability through reasonable diligence and additional training, if necessary; economic and non-economic contribution of both parties to the marriage; marital lifestyle; ability of each party to maintain the marital lifestyle; lost economic opportunity as a result of the marriage; and such other factors as the court considers relevant and material."

The judge found that the seven year old business valuation prepared for estate planning purposes, on which the husband here relies in making this argument, did not accurately reflect the current value of the business (specifically due to the subsequent substantial growth of the company); nor did he find a basis to apply any discounts for the husband's claimed "minority share" warranting a potential reduction in the value of this continuously expanding business.

During cross-examination, the husband agreed that he made two and one-half years' worth of payments prior to his 2007 marriage to the wife. These premarital payments, according to the judge, totaled $84,389 (thirty-one months x $2,722.22), equating to seventeen percent of the husband's total interest in the company.

We reject the husband's argument that the judge abused his discretion by not excluding the shares the husband acquired prior to the July, 2004, buyout. The judge would have been warranted in finding no evidence to establish the value of those shares.