NOTICE:  All slip opinions and orders are subject to formal revision and are superseded by the advance sheets and bound volumes of the Official Reports.  If you find a typographical error or other formal error, please notify the Reporter of Decisions, Supreme Judicial Court, John Adams Courthouse, 1 Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-1030; SJCReporter@sjc.state.ma.us

19-P-1618                                          Appeals Court

GEORGE CLEMENCE  vs.  KRISTINE SKLENAK.

No. 19-P-1618.

Worcester.     July 15, 2020. - October 16, 2020.

Present:  Blake, Sacks, & Ditkoff, JJ.

Divorce and Separation, Modification of judgment, Alimony.

Complaint for divorce filed in the Worcester Division of the Probate and Family Court Department on May 27, 2015.

A complaint for modification, filed on August 17, 2017, was heard by Janine D. Rivers, J.

Christine D. Anthony for the wife.
Warren M. Yanoff for the husband.

BLAKE, J.  In this case, we consider whether the Alimony Reform Act's (act's) durational limits, set forth in G. L. c. 208, § 49 (b), began to run on the date of the judgment of divorce nisi (divorce judgment) or on the date of the modification judgment, where the divorce judgment provided that the husband waived past, present, and future alimony, and that

he could seek future alimony only if an anticipated sale of real property for a sum certain failed to occur. We conclude that the divorce judgment provided for an initial "zero dollar alimony 'award,'" Buckley v. Buckley, 42 Mass. App. Ct. 716, 721 n.5 (1997), for the purposes of the act's durational limits. Accordingly, here, general term alimony commenced at that time.

Background. After approximately thirteen years of marriage, George Clemence (husband) and Kristine Sklenak (wife) were divorced on January 10, 2017, pursuant to the divorce judgment that incorporated the terms of their separation agreement (agreement).[1] The agreement contained the husband's express waivers of past, present, and future alimony. The agreement also provided that the husband's waiver of alimony represented an agreement that he would receive a disproportionate share (i.e., sixty percent) of the equity in the marital home and additional real property, and that the

---

[1] There is no dispute that for purposes of the act's durational limits the marriage was 141 months. Therefore, the durational limit of alimony is calculated as seventy percent thereof, or ninety-eight months. See G. L. c. 208, § 49 (b) (3) ("If the length of the marriage is [fifteen] years or less, but more than [ten] years, general term alimony shall continue for not longer than [seventy percent] of the number of months of the marriage"). In addition, based on the length of the marriage, only general term and rehabilitative alimony were applicable because reimbursement and transitional alimony apply to marriages of not more than five years. See G. L. c. 208, § 48. Neither party contends that it was error to award general term alimony.

"condition" for his waiver of alimony was the sale of the marital home to an unrelated party for $725,000. The agreement provided that should the sale not occur as contemplated, the parties would list the property for sale, divide the proceeds equally, and the husband would have the right to file a complaint for modification seeking alimony from the wife as there would be no disproportionate division of this asset. These alimony provisions were approved by a judge of the Probate and Family Court (divorce judge) and were merged into the divorce judgment.

The parties were unable to sell the marital home as planned; instead, it was sold to another buyer for $433,000. On August 17, 2017, the husband filed a complaint for modification seeking an order of alimony. On November 9, 2017, the divorce judge issued an order requiring the wife to pay $200 per week in temporary alimony to the husband during the pendency of the modification proceedings. After a trial at which both parties testified, a different judge (modification judge) entered the modification judgment, along with findings of fact and a rationale, ordering the wife to pay general term alimony to the husband of $200 per week commencing on August 24, 2018. The modification judgment provided that alimony would continue, unless otherwise modified, terminated, or suspended, until the first to occur of the death of either party, the husband's

remarriage, the husband's cohabitation, or October 8, 2026 (approximately ninety-eight months from the date of the modification judgment), all pursuant to G. L. c. 208, §§ 48-55. This appeal followed.

Discussion.  "The relevant change [to the Commonwealth's alimony laws] on appeal is the [act's] creation of durational limits -- or presumptive termination dates -- for alimony obligations arising from marriages lasting fewer than twenty years."  Van Arsdale v. Van Arsdale, 477 Mass. 218, 219 (2017). The presumptive durational period begins to run on the date of the initial general term alimony award, which is usually the date of the divorce judgment, see Holmes v. Holmes, 467 Mass. 653, 659-660 (2014), or a later date if alimony is not addressed in the divorce judgment.  See Snow v. Snow, 476 Mass. 425, 425, 428-430 (2017).  Here, the modification judge treated the modification judgment as the initial general term alimony award, and determined that the ninety-eight-month durational limit began to run at the time of the modification.[2]  The wife claims that this was error because alimony was first addressed in the

_____

[2] General Laws c. 208, § 49 (e), provides:  "Unless the payor and recipient agree otherwise, general term alimony may be modified in duration or amount upon a material change of circumstances warranting modification.  Modification may be permanent, indefinite or for a finite duration, as may be appropriate."

divorce judgment, and therefore the durational limit should have commenced at the time of the divorce. We agree.

"[T]he commencement of the durational limitation period [is] dependent on the award of general term alimony . . . . Thus, until a judge has awarded general term alimony, the duration of general term alimony does not begin to run." Snow, 476 Mass. at 430. "In cases where alimony was not contemplated in the judgment of divorce, an award of alimony thereafter is treated as an initial award of alimony commencing on that date, not an award that relates back in time to the date of the divorce." Flor v. Flor, 92 Mass. App. Ct. 360, 365 (2017). See Snow, supra at 429 (where "the wife did not pursue her request for maintenance [in the divorce proceedings] and the judge . . . made no findings based on the statutory factors in awarding no maintenance [in the divorce judgment,]" wife's postdivorce complaint seeking alimony "was an initial complaint for alimony rather than a complaint for modification"). However, where the separation agreement was incorporated and merged into the divorce judgment, and contained express waivers of past and present alimony, and the reservation of the right to seek future alimony, the divorce judgment was the initial alimony award, and any subsequent request for alimony should be treated as a complaint for modification. Buckley, 42 Mass. App. Ct. at 720-722. See Flor, supra at 365-366.

Here, as in Buckley, 42 Mass. App. Ct. at 717, the parties' agreement contained express waivers of past and present alimony. For the purposes of the act's durational limits, these waivers are tantamount to a "zero dollar alimony 'award.'" Id. at 721 n.5 (distinguishing "from [other cases] where there is neither 'provision' for, 'award' of, nor 'mention' of alimony in the divorce decree"). "By virtue of their agreement, [the parties] intended and reached a full and final settlement of their financial affairs." Id. at 720. See Flor, 92 Mass. App. Ct. at 365-366. The divorce judge found that the agreement was fair and reasonable, and as relevant here, made proper provisions for alimony and the disposition of marital property. This is uncontroverted evidence that the alimony provisions set forth in the separation agreement contained an initial award of general term alimony for purposes of the act's durational limits.[3] See

---

[3] Although the parties did not include in the record appendix the trial transcripts or copies of their financial statements, see Rule 401(a) of the Supplemental Rules of the Probate Court (2012), the modification judge found that the "husband's weekly income and expenses . . . have not changed since the divorce." From this, we infer that the husband's need for alimony on the date of the divorce judgment was similar, if not the same, as it was when he filed the complaint for modification. Notwithstanding, the parties, both represented by counsel, negotiated the agreement in which the husband waived past, present, and future alimony. The parties conditioned the husband's ability to seek future alimony on the failure of the anticipated sale of the marital home. We need not speculate what the result would be here if the husband's waiver of present alimony had been expressly conditioned on the completion of the sale.

Buckley, supra. Cf. Snow, 476 Mass. at 429 n.5 (divorce judgment ordering no alimony would have constituted initial alimony award "if the [divorce] judge had considered each of the statutory factors and determined based on the circumstances that no maintenance award was appropriate," because "the spouse who sought alimony would have had a full and fair adjudication on the merits of the claim for alimony").

Moreover, the husband "condition[ed]" his waiver of future alimony on the marital home selling for a sum certain, which is further evidence that the agreement contained an initial alimony award of zero dollars. This "condition" is the functional equivalent of a stipulation to a material and substantial change in circumstances. More specifically, if the marital home had sold at the price contemplated in the agreement, the parties agreed that there would be no alimony because the husband would receive a greater share of the sale proceeds. Embedded in this agreement is the implicit conclusion that if the sale did not occur as contemplated, the husband would likely have been entitled to alimony based on the disparity in the parties' incomes, the husband's need, and the wife's ability to pay alimony. When the sale fell through, the husband did not receive a disproportionate share of the proceeds and, therefore, he was entitled to request a modification of the alimony provisions set forth in the agreement. In essence, the parties

agreed that the failure of the contemplated sale constituted a material change in circumstances warranting modification of the initial zero dollar alimony award. See G. L. c. 208, § 49 (e). See also G. L. c. 208, § 37. Indeed, the modification judge found that the husband met his burden of demonstrating a material change in circumstances,[4] which is something that a "spouse seeking alimony for the first time need not demonstrate." Snow, 476 Mass. at 428. Accordingly, the parties' agreement to treat the failure of the contemplated sale as a material change in circumstances -- which they bargained for and the divorce judge approved -- is further evidence that the divorce judgment contained an initial award of general term alimony for purposes of starting the durational limit clock.

Conclusion. Section 2 (e) of the modification judgment is struck and shall be replaced with March 10, 2025.[5] As so modified, the modification judgment is affirmed. The parties' requests for attorney's fees are denied.

---

[4] The modification judge that found the husband "has demonstrated that there is a material change in circumstances in that the drastic reduction in the sale price of the marital home causes [his] continued dependence on the Wife." This finding is at odds with the modification judge's ultimate conclusion that the modification judgment was the initial award, as a change of circumstances is irrelevant to establishing an initial alimony award.

[5] The termination date is based on a presumptive durational limit of ninety-eight months.

<u>So ordered</u>.